## STATE OF CONNECTICUT *v.* NISSA APONTE
### (AC 15002)

Foti, Kulawiz and Daly, Js.

Argued June 8—officially released August 25, 1998

*Lori Welch-Rubin*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, assistant state's attorney, for the appellee (state).

### Opinion

DALY, J. The defendant, Nissa Aponte, appeals from the judgment of conviction, following a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1)[1] and two counts of

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or

risk of injury to a child in violation of General Statutes § 53-21.[2]

The defendant claims that the trial court improperly (1) instructed the jury on accessorial culpability, (2) denied her motion for acquittal and deemed the injuries inflicted to have comported with § 53a-59 (a) (1), (3) admitted evidence of prior custodial disputes, (4) admitted incomprehensible testimony by the victim, (5) condoned prosecutorial misconduct in which the state gave the victim a doll prior to her testifying, (6) permitted evidence of criminal convictions to impeach the defendant's only witness, (7) instructed the jury as to the victim's testimony, (8) failed to grant a mistrial at the conclusion of voir dire and (9) failed to grant the defendant's motion to dismiss one count of risk of injury to a child because of duplication.

The defendant and Carmen Lopez Casado were both charged with two counts of assault in the first degree and two counts of risk of injury to a child involving the defendant's three year old daughter. The cases were consolidated for trial and, after the jury was selected, the state moved for and the trial court granted severance of the two cases. The state elected to proceed against the defendant first. The defendant moved for dismissal of the jury based on the questioning of prospective jurors concerning their opinions on the defendant's sexual orientation. The motion was denied.

The trial court denied the defendant's request to conduct a hearing into the competency of the child. It also

to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

denied a motion for a mistrial that was based on the prosecution's giving the victim a doll prior to her testifying. The trial court also denied the defendant's motion to strike the victim's testimony as being incomprehensible.

The jury reasonably could have found the following facts. The defendant is the mother of the victim, who was born on April 7, 1990. At the time the victim was one and one-half years old, the defendant requested that her friend, Ermys Lugo, raise her. In February, 1994, Lugo turned the child over to the defendant pursuant to a court order. The child was physically sound at that time.

On March 30, 1994, the defendant arrived at the home of her mother, Irma Ramos, with her daughter, whose eyes were black and swollen. The defendant explained that the child had struck the inside of the car. The defendant left the child with Ramos after being assured that the latter would not notify the police. Ramos noticed marks on the victim's back, front and legs when giving her a bath. Ramos secreted the child with a neighbor to hide her from the defendant. The neighbor called the Bridgeport police on March 31, 1994. The child was taken by ambulance to Bridgeport Hospital, where she remained for a few days. She told Ramos that both the defendant and Lopez Casado had hurt her.

Officer David Osika of the Bridgeport police department responded to the neighbor's call and inquired about who had injured the victim. The victim indicated that her mother, the defendant, had done it. Detective Michael Whittaker of the Bridgeport police youth bureau also responded to the neighbor's home and asked the victim how she was injured. The victim said "la pata," Spanish slang for lesbian. Whittaker interviewed the defendant, who implicated Lopez Casado as having harmed the victim. He took another statement

from the victim that both the defendant and Lopez Casado had hit her using a belt, and that Lopez Casado inflicted abrasions to her knees and burned her finger.

The emergency room physicians discovered, in addition to the eye injury, that there were numerous marks on the victim's arms, thighs, knees, lower legs, chest, abdomen, back, ear and behind the ear. Nada Abdel A'al, an emergency room pediatric resident, examined the victim and diagnosed a pancreatic injury, which proved not to be life threatening. She determined that the eye injury was serious and that the victim could not open her left eye.

Richard Garvey, a general surgeon, testified that laboratory test results indicated possible internal bleeding consistent with an injury to the pancreas, making death a possibility. His overall diagnosis was "battered child syndrome." This diagnosis was confirmed by Alison Driggers, a pediatrician, who also determined that the pancreatic injury created a risk of death.

The defendant's only witness was Carmen Lopez, Lopez Casado's mother, who testified that on March 30, 1994, the victim was on the middle rear seat of her car as Lopez exited from her driveway. A truck caused her to apply the brakes suddenly causing the victim to fall forward between the front bucket seats.

I

The defendant claims that the trial court violated her rights to due process and a fair trial[3] by giving the jury a supplemental instruction that allowed the jury to convict her as an accessory on two counts of assault in the first degree and two counts of risk of injury to a child. The defendant argues that the state prosecuted her only as a principal and that in preparing her defense, she relied on not being charged as an accessory.

---

[3] The defendant cites article first, § 8, of the constitution of Connecticut.

We are unpersuaded because it is clear from the record that the defendant was on notice that she could face liability as an accessory, as specifically set forth in the state's reply to the defendant's request for a bill of particulars.[1] The defendant suffered no prejudice from the trial court's supplemental instruction.

"The fact that a defendant is not formally charged as an accessory pursuant to General Statutes § 53a-8 does not preclude a conviction as such. *State* v. *Crump*, 201 Conn. 489, 493, 518 A.2d 378 (1986). This state . . . long ago adopted the rule that there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility. *State* v. *Harris*, 198 Conn. 158, 164, 502 A.2d 880 (1985). Under the modern approach, a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . Id. [T]here is no such crime as being an accessory . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed. *State* v. *Baker*, 195 Conn. 598, 608, 489 A.2d 1041 (1985). [*State* v. *Harris*, supra], 163." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 340–41, 696 A.2d 944 (1997).

The defendant further claims that the evidence did not support giving the charge on accessorial culpability. "[T]o convict one as an accessory for aiding and abetting, the state must prove that the accused had both criminal intent and community of purpose with the principal perpetrator of the crime. General Statutes § 53a-8 requires (1) that the accessory have the intent to aid the principal, and (2) that, in so doing, he have the intent to commit the offense with which he is charged."

---

[1] Paragraph four of the bill of particulars states: "State objects to this request and puts the defendant on notice that an accomplice/accessory jury instruction will be sought by the state."

*State* v. *Tucker*, 9 Conn. App. 161, 164, 517 A.2d 640 (1986). "Intent may be inferred from the circumstances and from what was done." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 66c, p. 474.

The jury reasonably could have believed that the victim had been subjected to numerous injuries inflicted by both the defendant and Lopez Casado at various times. We are convinced from a review of the evidence that it was sufficient to support the trial court's instruction on accessorial culpability.

## II

The defendant claims that the trial court improperly denied her motion for judgment of acquittal, since the evidence was insufficient to warrant her conviction for assault in the first degree. She claims that the evidence failed to establish "serious physical injury" either to the pancreas or the eye. Section 53a-59 (a) provides in part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury . . . ." General Statutes § 53a-3 (4) defines serious physical injury as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

It is axiomatic that the state has the burden of proving each element of the offense beyond a reasonable doubt. 1 B. Holden & J. Daly, supra, § 58a, p. 324. "We begin our analysis by restating the principles that guide and define the scope of our review. When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could

have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Cintron*, 39 Conn. App. 110, 118, 665 A.2d 95 (1995).

"[W]e have repeatedly stated that our review of the conclusions of the trier of fact, whether it be a judge, a panel of judges or a jury, is limited. . . . This court will construe the evidence in the light most favorable to sustaining the trial court's [judgment] and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. . . . The probative force of direct and circumstantial evidence is the same. . . . *State* v. *DeJesus*, 236 Conn. 189, 200, 672 A.2d 488 (1996)." (Internal quotation marks omitted.) *State* v. *Peruccio*, 47 Conn. App. 188, 194, 702 A.2d 1200 (1997), cert. denied, 243 Conn. 964, 707 A.2d 1266 (1998).

Garvey, a surgeon who examined the victim in the emergency room, testified that her pancreatic injury created a risk of death. Abdel A'al, a pediatric resident who examined the victim in the emergency room, testified that the victim's left eye injury impaired her vision in that eye, albeit temporarily.

The statute does not require that the impairment of the organ be permanent. See *State* v. *Rumore*, 28 Conn. App. 402, 415, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). We cannot say as a matter of law that the jury could not reasonably have found on the basis of the evidence presented that the victim suffered a "serious physical injury." The trial court correctly denied the motion for judgment of acquittal.

## III

The defendant claims that the trial court improperly admitted evidence of a December 10, 1993 custodial dispute involving the victim at the city welfare office

in which the defendant and Lopez Casado grabbed the crying child from Lugo and abducted her. The police were notified, and the victim was found at Lopez Casado's residence and returned to Lugo, who had been designated the child's guardian by the defendant. Officer Richard Azzarito of the Bridgeport police department testified that the victim was "huddled up in a fetal position on a mattress, a makeshift bed on the floor." He stated that she was crying and wanted to return to Lugo, and that she was delighted to be reunited with Lugo.

On February 9, 1994, the defendant requested that the police escort her to retrieve the victim from Lugo. Officer James Baraja escorted the defendant and, at trial, testified that he had observed none of the physical marks on the victim that he later saw on March 31, 1994, when he accompanied Whittaker to the home of Ramos' neighbor. The defendant objected to this evidence on the grounds that it was prejudicial and irrelevant. The state claimed that the evidence was indicative of motive in that the defendant was angry and wanted to punish the victim because she preferred to remain with Lugo. The trial court overruled the defendant's objections.

While acts "of misconduct do not in and of themselves prove intent [to assault], they are relevant to establish, in connection with the question of intent, a pattern of behavior and an attitude toward the child that is indicative of the defendant's state of mind." *State* v. *Tucker*, 181 Conn. 406, 415, 435 A.2d 986 (1980).

The evidence was also relevant to prove the physical condition of the child on those occasions. " 'We may usefully begin our inquiry on this issue by restating the two-step analysis that a trial court must conduct in deciding whether to admit evidence of a party's collateral misconduct. The court first must determine

whether the evidence is relevant and material to an issue properly before the court. . . . Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . . Second, after a finding that the evidence is relevant, the trial court must then decide whether its admission is warranted because its probative value outweighs its prejudicial effect.' " *Berry* v. *Loiseau*, 223 Conn. 786, 804, 614 A.2d 414 (1992).

"Because of the latitude we accord trial courts on questions of relevance . . . and [b]ecause of the difficulties inherent in [the process of balancing probative value and prejudicial effect], the trial court's decision [to admit evidence of other misconduct] will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 804–805.

Applying these standards to the facts in this case, we conclude that the trial court did not abuse its discretion.

## IV

The defendant next claims that the trial court improperly permitted the four year old victim to testify without first determining her competency and admitted incomprehensible testimony depriving the defendant of the right to meaningful cross-examination.

"Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there are often no witnesses except the victim." (Internal quotation marks omitted.) *State* v. *James*, 211 Conn. 555,

566, 560 A.2d 426 (1989). General Statutes § 54-86h provides in relevant part: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault . . . shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

Furthermore, "[t]he absence of the preliminary hearing for a child . . . assault victim does not in our judgment significantly hamper effective cross-examination so long as the child can give testimony satisfying minimum standards for relevancy"; *State* v. *James*, supra, 211 Conn. 565; or credibility. *State* v. *Weinberg*, 215 Conn. 231, 243, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

"Certainly if a child . . . assault victim could only babble or could present no useful evidence, its testimony could hardly be deemed relevant or probative. . . . Many witnesses, not only children, have difficulty in remembering events, understanding questions, and expressing themselves clearly, disabilities that often raise problems for the cross-examiner." *State* v. *James*, supra, 211 Conn. 564–65.

On the basis of § 54-86h, the trial court properly denied the request for a preliminary hearing on the competency of the victim. Furthermore, the trial court did not abuse its discretion in determining that the victim's testimony met the necessary standards. "Inconsistencies in testimony and witness credibility are matters that are within the exclusive purview of the jury to resolve at trial." *State* v. *Smith*, 46 Conn. App. 600, 608, 700 A.2d 91, cert. denied, 243 Conn. 935, 702 A.2d 642 (1997).

V

The defendant next appeals from the denial of her motion for a mistrial. She claims that the actions of the

prosecution in giving the victim a doll and a ride in the witness chair in the hallway constituted prosecutorial misconduct, i.e., improperly influencing a witness.

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . *State* v. *Wooten*, [227 Conn. 677, 693–94, 631 A.2d 271 (1993)]. On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. *State* v. *Rodriguez*, 210 Conn. 315, 333, 554 A.2d 1080 (1989); *State* v. *Bausman*, 162 Conn. 308, 312, 294 A.2d 312 (1972). . . . *State* v. *Day*, 233 Conn. 813, 836–37, 661 A.2d 539 (1995). The trial court is in a better position than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. Id., [836–37]. The decision whether to grant a mistrial is within the sound discretion of the trial court. Id., 835; see Practice Book § 887 [now § 42–43]." (Internal quotation marks omitted.) *State* v. *Correa*, supra, 241 Conn. 350–51.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We must, therefore, determine whether the [actions] of the prosecutor, in light of all the circumstances, including the trial court's charge, were so egregious and so damaging to the defendant that they deprived him of a

fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Sivri*, 46 Conn. App. 578, 590–91, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997). " 'In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Fullwood*, [194 Conn. 573, 585, 484 A.2d 435 (1984)]; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, [194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985)]; see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra [1181]; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra [654]; and the strength of the state's case. See *United States* v. *Modica*, supra [1181]; *State* v. *Couture*, supra, 564; *State* v. *Glenn*, [194 Conn. 483, 492, 481 A.2d 741 (1984)].' " *State* v. *Sherman*, 38 Conn. App. 371, 377, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

The defendant was accorded a wide range of latitude in cross-examining the victim. In view of this latitude and after consideration of the factors set forth in *State* v. *Sherman*, supra, 38 Conn. App. 377, we hold that the prosecutor's actions here were not so egregious or damaging as to deny the defendant a fair trial.

## VI

The defendant next claims that the trial court improperly permitted the introduction of a twenty-three year old welfare fraud conviction and a 1987 unnamed felony conviction to impeach the defendant's only witness, Carmen Lopez.

Prior convictions that are admissible for impeachment purposes may be segregated into two general categories. First are those crimes that by their very nature indicate dishonesty or tendency to make false statements. The second category encompasses convictions for crimes that although they do not reflect directly on one's credibility, they show a general disposition toward evilness and thus support an inference of a readiness to lie. See *State* v. *Dawkins*, 42 Conn. App. 810, 819, 681 A.2d 989, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996); *State* v. *Theriault*, 38 Conn. App. 815, 822, 663 A.2d 423, cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995); *State* v. *Johnson*, 4 Conn. App. 672, 673–74, 496 A.2d 522 (1985).

"[Our Supreme Court has] sanctioned a general guideline for the determination of remoteness that parallels rule 609 (b) of the Federal Rules of Evidence. Rule 609 (b) establishes a ten year limitation from conviction or release from resulting confinement upon the use of the conviction for impeachment purposes unless the probative value of the conviction substantially outweighs its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Webb*, 37 Conn. App. 722, 732, 657 A.2d 711, cert. denied, 234 Conn. 915, 660 A.2d 357 (1995). Prior convictions may surmount the ten year bar when they reflect a larcenous intent and thus are probative of dishonesty. Id. Acts of deceit, fraud, cheating or stealing are regarded as conduct that reflects adversely on a witness' honesty and integrity. See *State* v. *Nardini*, 187 Conn. 513, 523–24, 447 A.2d 396 (1982).

Welfare fraud falls into this category. The 1987 unnamed felony conviction was less than ten years old at the time of trial, which occurred in 1995.

The court's decision will be upset only if the court abused its discretion. 2 B. Holden & J. Daly, supra, § 125b (4), p. 1237. We find no abuse of discretion.

## VII

The defendant claims that the trial court failed to instruct the jury in accordance with a request to charge concerning special considerations relating to the credibility of a child witness and that it mischaracterized the nature of her testimony.[5]

The defendant requested a cautionary instruction be given that "a young child may be more amenable to any influence or suggestion which may be made to her by older persons and particularly by persons closely related to her. A child's imagination often misleads her and, may to her, take on all semblances of actual facts and she will relate them as such. The sanctity of oath and the solemnity of legal proceedings may appeal to her less than to an adult."

" 'The prevailing view . . . is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness and, if so, the nature of that instruction.' " *State* v. *James*, supra, 211 Conn. 567–68. The instruction requested by the defendant was not for the statement of any rule of law but for a cautionary comment on the evidence. We have frequently referred to the broad discretion of a trial court in commenting on the evidence. We conclude that the trial court did not abuse

---

[5] The trial court did charge: "You may consider age, demeanor while testifying, capacity to observe facts and to recollect them, ability to understand questions put to her and ability to answer them intelligently."

its discretion in refusing to so charge on the credibility of a child witness.

The defendant also claims that the trial court improperly characterized the evidence in stating that the victim "testified that both the defendant and [Lopez Casado] had used a belt to injure her, and she retold the same story to the police, the medical staff and here in court to you."

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991). "The pertinent test is whether the charge read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) Id., 465.

The trial court accurately summarized the victim's testimony in conjunction with its applicability to accessorial culpability.

## VIII

The defendant claims that the trial court should have granted her motion for a mistrial made at the conclusion of voir dire and after the codefendant's case was severed because the lesbian relationship between the codefendants was explored during voir dire by other counsel, thus denying the defendant a fair trial.

This claim is similar to one made in *State* v. *Safford*, 21 Conn. App. 467, 470, 574 A.2d 1305, cert. denied, 216 Conn. 803, 577 A.2d 717 (1990), where the separate incidents of sexual assault were charged and referred to during the voir dire, and after jury selection was completed but before the jury was sworn in, the state

chose not to proceed with the charge as to the second incident. The defendant moved to dismiss, arguing that the jury's knowledge of the other charge would be overly prejudicial to him. Id.

A motion for a mistrial is treated as a motion to dismiss the jury. The trial court possesses wide discretion in passing on such a motion. It should be granted only where it is apparent that the defendant has been deprived of the opportunity for a fair trial. The ultimate question on a motion to dismiss the jury is whether there was substantial and irreparable prejudice to the defendant's case. Of particular importance in our inquiry is the conduct of voir dire. Voir dire plays a critical function in assuring the criminal defendant that her sixth amendment right to an impartial jury will be honored.

"Unless all [of a defendant's] peremptory challenges have been exercised before the completion of jury selection, it is presumed that no juror was permitted to serve whom the defendant regarded as biased or unsuitable, although he [or she] might have preferred others." (Internal quotation marks omitted.) State v. Mercer, 208 Conn. 52, 61–62, 544 A.2d 611 (1988). The twofold purpose of voir dire is "to permit the trial court to determine whether a prospective juror is qualified to serve, and to aid the parties in exercising their right to peremptory challenges. . . . Voir dire should be limited to those questions which are pertinent and proper for testing the capacity and competency of the juror . . . and which are neither designed nor likely to plant prejudicial matter in [the jurors' minds]." (Citation omitted; internal quotation marks omitted.) State v. Skipper, 228 Conn. 610, 625–26, 637 A.2d 1101 (1994).

The defendant's sexual orientation was an intricate part of the case, since the victim had referred to her abuser using Spanish slang for lesbian, as did other witnesses. The jurors chosen indicated their impartiality. Curative instructions, to which the defendant failed

to take any exception, were given and appropriately addressed the circumstances at hand. "The jury is presumed to follow the court's directions in the absence of a clear indication to the contrary. . . . *State* v. *Raguseo*, 225 Conn. 114, 131, 622 A.2d 519 (1993)." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 242, 710 A.2d 732 (1998). Furthermore, it should be noted that the defendant exercised only one peremptory challenge. The record thus discloses no evidence that the jurors who sat on the defendant's case were prejudiced.

On this basis, we conclude that the defendant has failed to show that actual juror bias deprived her of a fair trial.

IX

The defendant finally claims that the third count charging risk of injury to a child on or about March 30 or 31, 1994, should have been dismissed on the ground of double jeopardy because the fourth count charges risk of injury to a child between the dates of March 1 and March 31, 1994.

"Double jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. . . . Before the double jeopardy prohibition is triggered, however, it must appear . . . that the crimes arose out of the same act or transaction . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Snook*, 210 Conn. 244, 261, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). "The defendant on appeal bears the burden of proving that the prosecutions are for the same offense in law and fact." Id., 264.

"Each assault . . . constituted a discrete offense, separately punishable under our law. The same rationale applies with equal force to the crime of risk of

injury, that is, each claim of risk of injury . . . constituted a separate and distinct crime." *State* v. *Angelo*, 25 Conn. App. 235, 242, 594 A.2d 24, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991).

The state's position is that the third count is based on the eye injury, which occurred on March 30, 1994, the day before the victim's admission to the hospital. The fourth count is based on the injury to the victim's pancreas, which was of recent origin, and on beatings that were at least two weeks old and cigarette burns that were at least one week old.

The defendant has failed to meet her initial burden of demonstrating that her conviction on the charges of risk of injury to a child arose out of the same act.

The judgment is affirmed.

In this opinion the other judges concurred.