## STATE OF CONNECTICUT *v.* JOSEPH BARRETTA
(AC 23670)

Foti, Flynn and Bishop, Js.

Argued February 26—officially released May 4, 2004

*John R. Williams*, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom were *John J. Davenport*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Joseph Barretta, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree as an accessory in violation of General Statutes §§ 53a-8 (a)[1] and 53a-60 (a) (3).[2] On appeal, the defendant claims that the evidence presented was insufficient to sustain his conviction. Specifically, the defendant contends that the state failed to prove, beyond a reasonable doubt, that he had caused the victim to sustain a serious physical injury, which was an essential element of assault in the second degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of December 3, 1999, at about 10 a.m., John Quiello was operating his car on Main

---

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

Street in East Haven when he encountered his godfather and cousin, the victim, Mark Scarpellino, who was driving with his friend, Michelle Schettino. When the two cars stopped at a traffic light, Quiello accused Scarpellino of cutting him off while driving. The two exchanged words. Quiello then threw a cup of coffee into the other vehicle and began to exit his vehicle, but Scarpellino drove away before anything further took place.

Quiello was angry and called the defendant, his stepfather, by cellular telephone. The defendant, who was at work, agreed to meet Quiello so that they could "take care of this" together. After meeting, the two drove to College Street in New Haven, where the victim's brother, Daniel Scarpellino, owned a business called Scarpellino's Sub Shop. They arrived at about 11:30 a.m. and observed the victim's car in an adjacent alley. Quiello parked so as to block the victim's vehicle and learned from Schettino, who was seated in the vehicle, that the victim had gone into the restaurant. When Quiello and the defendant entered the restaurant, the victim was not present, but the defendant stated to Daniel Scarpellino: "[T]oday is the day I bury your brother." Quiello and the defendant left the restaurant, but waited behind the building for the victim. Quiello took a baseball bat from his car and smashed a headlight on the victim's car. As the victim came out of the rear of the building, the defendant grabbed him from behind and Quiello proceeded to beat him about his body repeatedly with the bat. The defendant kept telling Quiello to hit the victim repeatedly. The defendant finally released the victim, who fell to the ground. The defendant then kicked him in the rib cage, stomach and back. Quiello and the defendant then left the scene. The victim had great difficulty walking and had to be assisted by Daniel Scarpellino and Schettino. Both observed his condition and urged him to go to a hospital, which he refused to do.

The following day, the victim's bruising worsened, and he was still unable to walk without difficulty. On December 6, 1999, the victim went to the outpatient clinic at the Hospital of Saint Raphael and was treated by Carol Amico, a physician's assistant. She prescribed two medications, an analgesic and a muscle relaxant, and also directed him to go to radiology for X rays, but he refused to go.

On September 20, 2002, the defendant was convicted, following a jury trial, of assault in the second degree as an accessory. On September 23, 2002, he filed a motion for a judgment of acquittal, claiming that the state's evidence did not establish that the injury inflicted on the victim was a serious physical injury, as required by § 53a-60 (a) (3). The court denied the motion on November 15, 2002. This appeal followed. Additional facts will be set forth as needed.[3]

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the [evidence] so construed . . . the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 575–76, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

---

[3] The state has asked that we take judicial notice of the transcript concerning the plea and sentencing of Quiello that took place on December 7, 2001. The record, however, does not reflect that any part of that transcript was presented to the jury at the subsequent trial of the defendant. Our task is limited to determining whether the evidence, as presented to the jury, was sufficient to prove beyond a reasonable doubt that the victim sustained a serious physical injury. See *State* v. *Best*, 56 Conn. App. 742, 752–53, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000). We may not look beyond the record as established at trial to accomplish that duty.

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"It bears emphasis that [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Best*, 56 Conn. App. 742, 752–53, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000).

Here, the defendant argues that although the victim may have suffered pain, bruising and temporary restricted mobility, the injuries did not create any risk of death, serious disfigurement, loss of any bodily organ, the function of any organ or any serious impairment. The defendant further argues that although the evidence may have been sufficient to sustain a conviction of assault in the third degree as an accessory, it was not sufficient for the crime for which he was convicted. We do not agree.

Whether the physical injury sustained was a serious physical injury that caused serious disfigurement is a question of fact for the jury. See *State* v. *Almeda*, 211 Conn. 441, 450, 560 A.2d 389 (1989). As a result, our review of the defendant's claim is limited to determining whether the jury reasonably could have concluded that the victim's injury was a "serious physical injury" within the meaning of General Statutes § 53a-3 (4), which defines the term to mean "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." Further, although our Penal Code does not define in title 53a of the General Statutes what exactly constitutes "disfigurement," as contained in that definition, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997). To "disfigure" is to "blemish or spoil the appearance or shape of"; American Heritage Dictionary (New College Ed. 1976); and "disfigurement" is "[t]hat which impairs or injures the beauty, symmetry, or appearance of a person or . . . which renders unsightly, misshapen, or imperfect, or deforms in some manner." Ballentine's Law Dictionary (3d Ed. 1969).

Furthermore, we have, on previous occasions, concluded that the term "serious physical injury" does not require that the injury be permanent. *State* v. *Denson*, 67 Conn. App. 803, 811, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002); *State* v. *Aponte*, 50 Conn. App. 114, 121, 718 A.2d 36 (1998), rev'd in part on other grounds, 249 Conn. 735, 738 A.2d 117 (1999), citing *State* v. *Rumore*, 28 Conn. App. 402, 415, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). We also have stated that a victim's complete recovery is of no consequence; see *State* v. *Dickson*, 10 Conn.

App. 462, 465, 523 A.2d 935 (1987); nor is the fact that the skin was not penetrated dispositive. See *State* v. *Ortiz*, 14 Conn. App. 493, 494–97, 542 A.2d 734, cert. denied, 209 Conn. 804, 548 A.2d 441 (1988).

Here, although the victim did not testify,[4] the jury heard evidence of the beating and was able to observe through medical evidence, eyewitness testimony and photographs of the victim the extent of the injuries sufficient to support a finding that the injuries constituted serious disfigurement. Specifically, the evidence showed that the victim sustained numerous severe bruises, abrasions and contusions across the trunk of his body. He also had an imprint and welts on his back that caused his skin to be a varied color of purple and blue, with additional visible injuries to his upper left shoulder and neckline. Further abrasions were visible on his collarbone, and there were bruises on his breastbone. Additionally, the medical testimony, given by an attending physician's assistant, described extensive and severe bruising that covered more of the victim's body than the photographs reflected and caused the victim to be tender to pressure across his back and left side.

Consequently, our review of the record cannot lead us to say, as a matter of law, that the jury could not reasonably have found that the victim suffered serious physical injury, which caused serious disfigurement. Having so opined, we cannot substitute our judgment for that of the jury. See *State* v. *Rodriquez*, 200 Conn. 685, 693, 513 A.2d 71 (1986). We therefore conclude that the court properly denied the defendant's motion for a judgment of acquittal, as the evidence before the jury was sufficient for it to conclude beyond a reasonable doubt that the victim had sustained serious physical injury.

---

[4] The record reflects that the victim died of a ruptured spleen twelve days after the attack. The jury was made aware of the fact that he had died, but was instructed that the defendant had not been charged with his death.