STATE OF CONNECTICUT *v.* CHRISTOPHER LEWIS
(AC 34798)

Alvord, Bear and Flynn, Js.

Argued September 12—officially released November 5, 2013

*Bradford Buchta*, assistant public defender, for the appellant (defendant).

*Jennifer F. Miller*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Michael A. DeJoseph*, assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Christopher Lewis, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (1), and, following his plea of nolo contendere, of being a persistent serious felony offender in violation of General Statutes § 53a-40 (c) (2). On appeal, the defendant claims that the trial court improperly (1) denied his request to instruct the jury on third degree reckless assault as a lesser included offense of second degree intentional assault, (2) excluded his proffered photographic evidence, in violation of his right to present a defense under the sixth amendment to the federal constitution, and (3) determined that there was sufficient evidence for the state

to establish beyond a reasonable doubt that he caused "serious physical injury" to the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Evan Driscoll, accompanied Stephanie Bernier to the courthouse in Norwalk on June 1, 2011. Bernier was the defendant's girlfriend, and they both had been arrested the previous night in connection with an incident in Norwalk witnessed by Driscoll. The incident had caused Driscoll to call the police. According to Driscoll's testimony, the defendant approached Driscoll as he and Bernier exited the courthouse, asked whether Driscoll had called the police, and threatened Driscoll. The defendant admitted that he asked Driscoll about the call to the police but denied threatening Driscoll.

The following day, on June 2, 2011, the defendant and Driscoll had another encounter, at the intersection of Fairfield Avenue and West Avenue in Bridgeport. Driscoll testified at trial that he was walking down Fairfield Avenue and texting on his cell phone when the defendant approached him and punched him in the side of the head with a closed fist. The defendant punched Driscoll in the side of the head several more times. Driscoll then fell to the ground and curled into a fetal position while the defendant kicked him in the head.

The defendant disputed Driscoll's version of the incident at trial and testified that Driscoll approached him while he was walking toward a store at the corner of Fairfield Avenue and West Avenue. Driscoll was accompanied by another male, and Driscoll was "[n]ot very hostile but he was hostile . . . ." The defendant was "caught . . . off guard" and "couldn't believe [this] was happening . . . ." He "was just responding" and hit Driscoll, as "[n]othing but shock" went through the

defendant's head. The defendant did not intend to injure Driscoll; he was "just responding and going off instincts . . . ." He "was confused [because] things happened so quick." The defendant conceded that he kicked Driscoll in the head once after Driscoll fell to the ground.

During the incident, the mayor of Bridgeport, William Finch, was driving his city issued vehicle toward the intersection of Fairfield Avenue and West Avenue. His son, Peter Finch, was sitting in the passenger's seat. Peter Finch noticed the "very harsh" and "violent beating" and alerted his father, who turned on the vehicle's red and blue flashing lights and pulled over to intervene. Mayor Finch and his son exited the vehicle, and Mayor Finch yelled at the defendant to stop. The defendant testified that he was "stuck" and "didn't know what was going on" when Mayor Finch and his son first arrived at the scene. The defendant stopped, looked at Mayor Finch and his son, noticed the vehicle and its lights, and fled the scene. The police apprehended and arrested the defendant several blocks from the intersection.

Mayor Finch and his son stayed with Driscoll until an ambulance arrived. Mayor Finch testified that Driscoll was "semiconscious," "in a lot of pain," and "delirious." An ambulance soon arrived, and the paramedic on board, Bart Piekarski, rendered aid to Driscoll. Piekarski testified that Driscoll was cut above the left eye, bruised, and bleeding heavily from the head, face, and mouth. The ambulance transported Driscoll to a hospital, where he received treatment for his injuries.

The defendant was charged with one count of intimidating a witness in violation of General Statutes § 53a-151a and one count of assault in the second degree in violation of § 53a-60. The defendant pleaded not guilty to the charges. Thereafter, the state filed a part B information charging the defendant with being a persistent

serious felony offender in violation of § 53a-40 (c) (2). A jury trial followed, from February 29 to March 5, 2012.

The defendant made the following three requests during the trial that are now the subject of the present appeal. First, the defendant requested that the trial court instruct the jury on third degree reckless assault in violation of General Statutes § 53a-61 (a) (2) as a lesser included offense of second degree intentional assault in violation of § 53a-60 (a) (1). The defendant submitted a written request to charge and made oral requests both on the record and off the record during a charge conference. The trial court denied the request, and the defendant subsequently took a postcharge exception.

The defendant also requested that the trial court admit into evidence two color photographs of Driscoll taken on June 30, 2011, twenty-eight days after the incident. The photographs depicted Driscoll's face and profile, both seemingly unmarred by any visible facial injuries. The defendant argued to the trial court that the photographs were "highly relevant because for assault in the second degree, the state has to establish serious physical injury . . . ." The state objected to the admission of the photographs on relevancy grounds, and the court sustained the state's objection.

Finally, the defendant made an oral motion for a judgment of acquittal at the close of the state's case and renewed it at the end of the presentation of evidence. One of the grounds for the motion was that "the [s]tate ha[d] not presented sufficient evidence to establish serious physical injury . . . ." The court denied the motion on both occasions.

On March 5, 2012, the jury returned a verdict of not guilty as to the charge of intimidation of a witness and guilty on the charge of assault in the second degree. The defendant subsequently pleaded nolo contendere to

the charge of being a persistent serious felony offender contained in the part B information. The court thereupon sentenced the defendant to a ten year term of incarceration. This appeal followed.

I

The defendant first claims that the court improperly denied his request for a jury instruction on third degree reckless assault as a lesser included offense of second degree intentional assault because he met all four prongs of the test in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), for establishing his entitlement to an instruction on a lesser offense. We are not persuaded.

"A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty of only the lesser offense." (Citations omitted; internal

quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 260–61, 681 A.2d 922 (1996).

"The *Whistnant* test is conjunctive, requiring satisfaction of all four prongs." *State* v. *Smith*, 262 Conn. 453, 461, 815 A.2d 1216 (2003). The defendant claims that he has done so. The state in turn argues that the defendant has not satisfied the first, third, or fourth prongs. We conclude that the defendant has not satisfied the third and fourth prongs of *Whistnant*. See *State* v. *Joseph*, 116 Conn. App. 339, 353, 976 A.2d 772 (2009) (analyzing together "the third and fourth prongs of *Whistnant* because they are subject to the same evidentiary analysis"). Accordingly, we need not consider the additional prongs, and we conclude that the court properly denied the defendant's request to charge on a lesser include offense.

Section 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when (1) [w]ith *intent* to cause serious injury to another person, he causes such injury to such person or to a third person . . . ." (Emphasis added.) Section 53a-61 (a), the basis of the requested jury instruction, provides in relevant part: "A person is guilty of assault in the third degree when . . . (2) he *recklessly* causes serious physical injury to another person . . . ." (Emphasis added.) General Statutes § 53a-3 (13) provides that "[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in that situation . . . ." In contrast, § 53a-3 (11) provides that "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his

conscious objective is to cause such result or to engage in such conduct . . . ."

The following colloquy is the primary basis in the record for this court to conduct our *Whistnant* analysis, as the defendant concedes that the written request to charge "lacked a statement of the essential facts supporting the request"; Practice Book § 42-18; and relies upon a combination of the written request and oral request made during the colloquy in support of his claim:

"The Court: . . . We did have a charge conference on Friday afternoon. . . .

"[Defense Counsel]: . . . As we discussed in chambers, I was asking the court to instruct the jury both on intentional assault in the third degree and reckless assault in the third degree. My understanding is that the court is going to instruct on intentional assault in the third degree but not reckless.

"The Court: Well, we talked about lesser included offenses.

"[Defense Counsel]: That's correct, Your Honor.

"The Court: In a case where your client has asserted a self-defense justification to the principal charges.

"[Defense Counsel]: Right.

"The Court: Okay. Please continue.

"[Defense Counsel]: So, I just want to make a record that we are asking for the reckless lesser included offense, and I would submit that there is sufficient evidence for the court to give that charge based on my client's testimony that he sort of reacted that day. I think there was some testimony that he looked startled when Mr. Finch yelled, and so I think the jury could

find that he didn't have a specific intent and it could find that he was reckless in this case.

"The Court: Because he looked startled?

"[Defense Counsel]: Yes, Your Honor."

The court denied the defendant's request: "[A]s I did state in chambers when we had our charge conference, I cannot find a scintilla of evidence which would suggest that the court include an assault in the third degree charge in the reckless category—the recklessness category so that because there's no evidence, there's no need to charge and, obviously . . . if there is no evidence, I don't charge on it. That's very simple. That's black letter law for many, many years."

We now consider the request in relation to the third and fourth prongs of *Whistnant.* "[W]e analyze together the third and fourth prongs of *Whistnant* because they are subject to the same evidentiary analysis." *State* v. *Joseph,* supra, 116 Conn. App. 353. "Although [we] expressly [reject] the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios . . . we will, however, consider the evidence available at trial in the light most favorable to the defendant's request." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith,* supra, 262 Conn. 470.

"Th[e] third prong is satisfied where the evidence suggests at least a possibility that the elements of the lesser offense have been established." (Internal quotation marks omitted.) *State* v. *Fernandez,* 5 Conn. App. 40, 45, 496 A.2d 533 (1985). As to the fourth prong of the *Whistnant* test, "[w]e must answer [the question of whether it has been met] in the affirmative if viewing the evidence in the light most favorable to the defendant . . . reasonable minds could differ upon the existence or nonexistence of the element that distinguishes the

inclusive from the included offense. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) Id., 46–47.

"While th[e] defendant, of course, was no under obligation to present evidence in his own behalf, we recognize as a practical matter that the defendant, for purposes of the *Whistnant* test, ought, in order to be entitled to a jury instruction on a lesser included offense, to endeavor to place a particular element of the crime charged sufficiently in dispute under the fourth prong of *Whistnant*. This could occur either through the right of cross-examination, the major function of which is to put certain matters in dispute, or through evidence presented as part of the defendant's case. . . . It is not at all improper that the defendant, requesting a lesser included offense instruction, bear an obligation, weak though it may be, to demonstrate that there is evidence sufficiently in dispute to warrant giving the requested instruction. . . . The fourth prong of *Whistnant* specifically requires that the proof be sufficiently in dispute. . . . In the *Whistnant* context . . . the proof is sufficiently in dispute where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. . . . [T]he trial court, in making its determination whether the proof is sufficiently in dispute, while it must carefully assess all the evidence whatever its source, is not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence]." (Citations omitted; internal quotation marks omitted.) Id., 47–49.

Pursuant to our case law on the first prong of *Whistnant*, the factual basis for a proposed jury instruction

on a lesser included offense is the factual basis relied upon by a defendant in his request to charge. *State* v. *Smith*, supra, 262 Conn. 466; *State* v. *Corbin*, 260 Conn. 730, 746, 799 A.2d 1056 (2002). The defendant in the present case, in his request to charge on third degree reckless assault as a lesser included offense, relied upon his testimony that "he sort of reacted that day" and that "he looked startled when Mr. Finch yelled . . . ."[1] We repeat that "[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . ." General Statutes § 53a-3 (13).

The factual basis relied upon by the defendant in his request to charge does not address, let alone possibly establish, the elements of recklessness. Even when we view the defendant's testimony of his "reactive," "startled" behavior in the light most favorable to his request, we cannot reasonably discern from it the possibility that he was aware of but consciously disregarded a risk that he would cause serious physical injury to Driscoll. The defendant punched Driscoll, knocked him to the ground, and kicked him in the head before Mayor Finch and his son arrived. By the time Mayor Finch and his son arrived, Driscoll was lying on the ground and bleeding profusely. The defendant may have been "startled" when Mayor Finch arrived and yelled at him, but that does not excuse or justify his prior actions.

[1] The defendant argues in his reply brief that the factual basis for his request to charge was not limited to those specific instances of testimony and that instead "the gravamen of [his] argument . . . was that 'the jury could find that [he] didn't have a specific intent and it could find he was reckless in this case.'" The defendant's expansive characterization is not consistent with the narrow factual basis actually articulated during the request to charge, however, and we therefore decline to adopt it in conducting our *Whistnant* analysis.

Because we cannot reasonably discern the possibility of recklessness from the testimony relied upon by the defendant in support of his request to charge, we also cannot view such testimony to have provided a reasonable basis for the jury to consider the existence of such recklessness. We thus conclude that the defendant was not entitled to a jury instruction on third degree reckless assault as a lesser included offense of second degree intentional assault, because his request to charge did not satisfy the third and fourth prongs of *Whistnant*.

II

The defendant next claims that the court improperly excluded his evidentiary proffer of two color photographs depicting Driscoll's face without visible injury twenty-eight days after the punching and kicking incident, because these photographs were relevant to the issue of whether the defendant caused "serious physical injury" to Driscoll under §§ 53a-3 (4) and 53a-60. The defendant further claims that this exclusion violated his sixth amendment right to present a defense. We are not persuaded.

"The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . In our review, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Thomas*, 110 Conn. App. 708, 716, 955 A.2d 1222, cert. denied, 289 Conn. 952, 961 A.2d 418 (2008).

"The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony

of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . Where defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 775–76, 988 A.2d 188 (2010).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "Evidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2. "Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Bell*, 113 Conn. App. 25, 44–45, 964 A.2d 568, cert. denied, 291 Conn. 914, 969 A.2d 175 (2009).

"No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to reason and judicial experience. . . . The trial judge must consider many factors in ruling on relevancy. . . . In arriving at its conclusion, the trial court is in the best position to view the

evidence in the context of the entire case, and we will not intervene unless there is a clear abuse of the court's discretion. On appeal, we are limited in our review to a determination of whether, under the circumstances of the case, in exercising its broad discretion, the trial court could legally act as it did, and not whether we, under the same circumstances, would make the same ruling." (Citations omitted.) *State* v. *Aspinall*, 6 Conn. App. 546, 554, 506 A.2d 1063 (1986).

The defendant claims that the photographs were relevant to the issue of whether he caused "serious physical injury" to Driscoll because they depicted Driscoll's lack of permanent injury, a factor that the jury should have been able to consider in its decision-making process. The state argues in turn that the court properly sustained its objection to the photographs as irrelevant because (1) the photographs did not depict the state of Driscoll's broken bones or chipped teeth, which the state identified as the "serious physical injuries" at issue during trial, and (2) the relevant statutes do not list permanency as a criterion for "serious physical injury," which undermines the link that the defendant seeks to establish between a lack of permanency and a lack of seriousness with respect to Driscoll's injuries. We conclude that the court did not abuse its discretion in sustaining the state's objection.

In objecting to the admission of the photographs, the prosecutor argued: "I would submit that because the photographs were taken four weeks later and are not X rays, but just photographs that they are not relevant to whether or not he suffered a serious physical injury because, as Your Honor knows, it's the chipped teeth and the broken bones that are the serious physical injury. So, therefore, if they are being offered to show that he did not suffer serious physical injury, as [defense counsel] claims, they are not relevant because they are not X rays and they don't show his teeth. So, that and

combined with twenty-eight days later, I think that now we're just getting so far away from the event that I think we passed the point where the photographs would be relevant . . . ." The prosecutor reiterated that Driscoll's broken bones and chipped teeth were the "serious physical injuries" at issue during his closing argument: "The state would submit to you that the broken nose and the broken orbital bone are serious physical injury. The state would submit to you that the chipped teeth are a permanent injury."

In response to the state's objection to the admission of the photographs, the defendant in turn provided: "Your Honor, you know, I agree. The photos don't show his teeth and they don't show inside his body, you know, his bones and things like that, but those weren't the only injuries that we heard testimony about." The defendant similarly argues in his reply brief that the photographs were relevant on the issue of "serious physical injury," despite the state's stance that "they fail to depict the victim's internal injuries," because "the information was broadly worded, and the state never limited the alleged 'serious physical injury' to only the victim's internal injuries . . . ." (Citation omitted.)

The defendant's position does not accord with our well established relevancy standards. "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State* v. *Lombardo*, 163 Conn. 241, 243, 304 A.2d 36 (1972). Here, the defendant posits that the photographs were relevant because their depiction of the absence of *some* permanent injuries, twenty-eight days after the fact, rendered the absence of *any* serious injuries to be certain or more probable. The defendant thus has not established that

the court abused its discretion in excluding the photographs on relevancy grounds.

We also note that the defendant's claim is inconsistent with the principle that "[i]t is entirely possible to cause serious physical injury without causing disfigurement or a permanent injury." *State* v. *Denson*, 67 Conn. App. 803, 811, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002). We previously have commented that we do not know of any authority for the "proposition that the word permanent is linguistically identical to the term serious loss"; id.; as used in our assault statutes and Penal Code. The defendant acknowledges the holding in *Denson* but nonetheless insists that impermanency is one factor that a jury may consider in deciding whether any injury is a "serious physical injury" for purposes of our assault statutes. The cases to which the defendant cites for support are distinguishable, however, not only because of their individual facts but also because they all involved permanent, not impermanent, injuries. See, e.g., *State* v. *Nelson*, 118 Conn. App. 831, 848, 986 A.2d 311 (burn marks and scars caused by defendant pressing heated tools on victim's face and abdomen), cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010); *State* v. *Alford*, 37 Conn. App. 180, 185, 655 A.2d 782 (1995) (child's head injuries caused by defendant's abuse); *State* v. *Suarez*, 23 Conn. App. 705, 711, 584 A.2d 1194 (1991) (facial wounds caused by defendant striking victim in face with glass). The defendant has not provided and we have not found any authority for the proposition that impermanency can correlate with a lack of seriousness for purposes of defining a physical injury as "serious" under §§ 53a-3 (4) and 53a-60 (a) (1), despite our holding in *Denson*.

We hold for the foregoing reasons that the court properly exercised its discretion in sustaining the state's

objection to the admission of the photographs on relevancy grounds. "Because the trial court did not abuse its discretion in ruling that the evidence was irrelevant, the defendant's sixth amendment [right] . . . to present a defense [was] not violated." *State* v. *Davis*, 298 Conn. 1, 28, 1 A.3d 76 (2010).

## III

Finally, the defendant claims that the evidence was insufficient to establish beyond a reasonable doubt that he caused "serious physical injury" to Driscoll, per § 53a-60 (a) (1). We are not persuaded. "In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 593–94, 72 A.3d 379 (2013).

Section 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." "Although it may be difficult to distinguish between a serious physical injury and a physical injury, such a distinction must be drawn here. A person can be found guilty of assault in the second degree under . . . § 53a-60 only if he

causes *serious* physical injury to another person. . . . Whether the physical injury sustained . . . was serious [is] a question of fact for the jury, assuming sufficient evidence [was] introduced." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *McCulley*, 5 Conn. App. 612, 615, 501 A.2d 392 (1985).

The defendant claims that the evidence was insufficient to establish beyond a reasonable doubt that he caused "serious physical injury" to Driscoll under §§ 53a-3 (4) and 53a-60 (a) (1) for the following reasons: (1) Driscoll's injuries were not as grievous as injuries that this court and our Supreme Court have previously held to be "serious physical injuries" under our Penal Code and assault statutes; (2) Driscoll never lost consciousness during the incident; (3) the state did not provide expert testimony regarding the severity of Driscoll's injuries; (4) the medical records undermined any testimony by Driscoll regarding his injuries because they documented the absence of "significant injury" and his denial of weakness, dizziness, visual loss, and pain in the neck, back, chest, or abdominals; (5) Driscoll was treated in the emergency room and discharged the same night; and (6) Driscoll received minimal treatment for his injuries, which healed on their own.

The evidence also demonstrated, however, that Driscoll (1) suffered a forehead laceration that required stitches and did not fully heal for "maybe two weeks"; (2) suffered fractures to his right orbital floor and nasal bones; (3) experienced blurred vision for "[s]ix weeks at least" after the incident; (4) had difficulty breathing through his nose for "at least two to three weeks" after the incident because "a lot of blood clots [were] coming out"; and (5) had "[a]t least four" chipped teeth from the incident, which were still chipped at the time of trial. On the basis of the evidence, construed in the light most favorable to sustaining the verdict, and the inferences that reasonably could be drawn therefrom,

the jury reasonably could have concluded that Driscoll suffered physical injury that "cause[d] serious disfigurement"[2] and/or "serious impairment of health," such that he suffered "serious physical injury" under §§ 53a-3 (4) and 53a-60 (a) (1).

The defendant's position on what constitutes "serious physical injury" under our assault statutes also is contrary to several statements previously made by this court and our Supreme Court on the subject. First, regarding the issue of how grievous an injury must be to qualify as a "serious physical injury," our Supreme Court determined in *State* v. *Ovechka*, 292 Conn. 533, 545–47, 975 A.2d 1 (2009), that the serious physical injury inquiry is fact intensive and not predicated upon a threshold showing of grievousness.[3] In addition, with respect to the defendant's argument on the necessity of expert testimony, we have noted that "[o]ur case law . . . does not require medical testimony to establish the element of serious physical injury," so long as "there [is] sufficient direct or circumstantial evidence or a combination of both presented to the jury from which it may find such injury." *State* v. *Rumore*, 28 Conn. App. 402, 414, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). Furthermore, in response to the

---

[2] "[A]lthough our Penal Code does not define in title 53a of the General Statutes what exactly constitutes disfigurement, as contained in that definition, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . . To disfigure is to blemish or spoil the appearance or shape of; American Heritage Dictionary (New College Ed. 1976); and disfigurement is [t]hat which impairs or injures the beauty, symmetry, or appearance of a person . . . which renders unsightly, misshapen, or imperfect, or deforms in some manner. Ballentine's Law Dictionary (3d Ed. 1969)." (Citation omitted; internal quotation marks omitted.) *State* v. *Barretta*, 82 Conn. App. 684, 689, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).

[3] Our Supreme Court held in *Ovechka* that "temporary blindness, chemical conjunctivitis and chemical burns" caused by the defendant assaulting the victim with pepper spray could qualify as "serious physical injury" under § 53a-3 (4). *State* v. *Ovechka*, supra, 292 Conn. 547.

defendant's contention that the inconsistency between the medical reports and Driscoll's testimony renders the evidence insufficient, we have repeatedly provided that "[e]vidence is not insufficient [merely] because it is conflicting or inconsistent." (Internal quotation marks omitted.) *State* v. *Little*, 138 Conn. App. 106, 110, 50 A.3d 360, cert. denied, 307 Conn. 935, 56 A.3d 713 (2012); *State* v. *Francione*, 136 Conn. App. 302, 312, 46 A.3d 219, cert. denied, 306 Conn. 903, 52 A.3d 730 (2012). Finally, the defendant's interpretation of the evidence pertaining to Driscoll's recovery process runs counter to our statement in *State* v. *Barretta*, 82 Conn. App. 684, 689–90, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004), that "a victim's complete recovery is of no consequence . . . nor is the fact that the skin was not penetrated dispositive" of whether he suffered "serious physical injury."

We thus cannot say as a matter of law that the jury could not reasonably have found that Driscoll suffered "serious physical injury," for the aforementioned reasons. See *State* v. *Miller*, 202 Conn. 463, 489, 522 A.2d 249 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.