******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* FELIX A. IRIZARRY
(AC 39394)

Alvord, Sheldon and Pellegrino, Js.

*Syllabus*

Convicted of the crimes of assault in the second degree and breach of the peace in the second degree in connection with his conduct in striking the victim several times with a golf club, causing the victim to suffer injuries that included a fractured jaw, the defendant appealed to this court. He claimed, inter alia, that the evidence was insufficient to support his conviction of assault in the second degree in violation of statute (§ 53a-60 [a] [1]) because the state did not establish that he caused the victim serious physical injury, as defined by statute (§ 53a-3 [4]). *Held*:

1. The defendant's claim that the evidence was insufficient to support his conviction of assault in the second degree was unavailing, as the jury reasonably could have concluded that the victim suffered physical injury that caused serious impairment of his health such that he suffered serious physical injury within the meaning of §§ 53a-3 (4) and 53a-60 (a) (1); the defendant struck the victim with a golf club at least three times, which caused the fracture of the victim's jaw and affected his consciousness, the victim testified that his jaw was still fractured almost two years after the attack, and the testimony at trial and the victim's medical records established that his injuries had a lasting effect on the functioning of his jaw and resulted in a material modification to his diet after the attack.

2. The defendant could not prevail on his claim that he was deprived of his constitutional right to a fair trial as a result of an improper statement made by the prosecutor during closing argument to the jury: although the prosecutor improperly argued that the victim's treating physician, R, had testified that the kind of blunt force trauma that the victim experienced could cause a serious brain injury, as the court had sustained the defendant's objection to R's testimony as to whether the blunt force trauma experienced by the victim could lead to a concussion or brain damage, that impropriety was not so egregious that it deprived the defendant of a fair trial, as the prosecutor's comment was too remote to be harmful, it was not germane to whether the victim's broken jaw constituted a serious physical injury, and the court's instructions to the jury focused on the charge as presented in the information and reoriented the jury's focus to whether the broken jaw constituted a serious physical injury; moreover, the prosecutor's reference to the physician's testimony was an isolated comment that did not conform to a pattern of conduct that was repeated throughout the trial, and the court's instruction to the jury that argument and statements by attorneys during closing argument are not to be considered as evidence was sufficiently curative, and eliminated any danger that the prosecutor's comment might have misled the jury.

Argued January 17—officially released May 14, 2019

*Procedural History*

Two part substitute information charging the defendant, in the first part, with two counts each of the crimes of assault in the second degree and breach of the peace in the second degree, and, in the second part, with being a persistent serious felony offender, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the first part of the information was tried to the jury before *D'Addabbo, J.*; verdict of guilty; thereafter, the second part of the information was tried to the court; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Peter G. Billings*, assigned counsel, with whom, on the brief, was *Zachary E. Reiland*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Evelyn Rojas*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Felix A. Irizarry, appeals from the judgment of conviction, rendered against him following a jury trial on one count each of assault in the second degree in violation of General Statutes § 53a-60 (a) (1) and (2), and one count each of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1) and (2). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of second degree assault in violation of § 53a-60 (a) (1), and (2) prosecutorial improprieties during closing argument resulted in the violation of his right to a fair trial. We disagree and, accordingly, affirm the judgment of the trial court.

The jury was presented with the following evidence on which to base its verdict. On March 22, 2014, the victim, David Bennett, was standing in front of a neighborhood market in New Britain when he encountered the defendant exiting the market. After a short verbal exchange between them, the defendant retrieved a golf club from a vehicle parked on the opposite side of the street and began to chase the victim. During the course of his pursuit, the defendant struck the victim several times with the golf club, including once in the arm and once in the face, which resulted in the victim being knocked to the ground. While the victim was on the ground, the defendant continued to strike him with the club, hitting him at least once in the chest. An eyewitness called 911 and reported the incident. The defendant was later arrested when a truck matching the description of the vehicle that fled the scene of the assault was stopped by New Britain police. The defendant was found crouching in the rear cargo hold of the vehicle. A golf club was also found in the vehicle.

In a four count information, the defendant was charged with assault in the second degree in violation of § 53a-60 (a) (1),[1] assault in the second degree in violation of § 53a-60 (a) (2),[2] breach of the peace in the second degree in violation of § 53a-181 (a) (1), and breach of the peace in the second degree in violation of § 53a-181 (a) (2).[3] During the five day trial, the jury heard testimony with respect to the assault and the victim's injuries, which included an admission by the defendant that he struck the victim with a golf club. As a result of the assault, the victim experienced a momentary loss of consciousness and suffered a fractured jaw. Emergency medical responders found that the victim was bleeding from his left ear when they arrived at the scene.

The victim's treating physician, Paul Edward Russo, Jr., testified at trial that the victim sustained injuries to his left cheek, left jaw, right forearm and chest wall. Russo further testified that when the victim presented at the hospital emergency department, his arm was

tender and swollen, with a visible contusion and skin avulsion, in addition to a contusion on the left side of the face. A computerized axial tomography scan revealed a nondisplaced fracture of the victim's lower jaw. Three sutures were necessary to close the wound on the victim's face. The victim was discharged from the hospital after he was treated with antibiotics and analgesics, with instructions that he restrict his diet to liquid puree. He was further instructed to follow-up at a maxillofacial clinic regarding his jaw injury. The victim testified that, as of the date of trial, his jaw still was not fully healed.

As part of his trial strategy, the defendant chose to testify in his own defense. Specifically, he testified that, although he did, in fact, strike the defendant, he did so in self-defense. Despite the defendant's testimony, the jury found the defendant guilty on all charges. On May 26, 2016, the defendant was sentenced to seven years of incarceration, followed by three years of special parole.[4] This appeal followed.

The defendant raises two claims on appeal. The defendant first claims that there was insufficient evidence to convict him of assault in the second degree under § 53a-60 (a) (1), in that the state did not establish that he caused "serious physical injury" to the victim, as defined by General Statutes § 53a-3 (4).[5] Second, the defendant claims that he was deprived of a fair trial because of prosecutorial improprieties during closing argument, in particular, the prosecutor's reference to and reliance on facts not in the record. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the evidence presented at trial was insufficient to establish, beyond a reasonable doubt, that he caused "serious physical injury" to the victim, as defined by § 53a-3 (4). We disagree.

"A person can be found guilty of assault in the second degree under . . . § 53a-60 [(a) (1)] only if he causes serious physical injury to another person." (Emphasis omitted.) *State* v. *McCulley*, 5 Conn. App. 612, 615, 501 A.2d 392 (1985). Section 53a-3 (4) defines "serious physical injury" as any "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." "[S]erious physical injury" does not require a showing of permanency; *State* v. *Barretta*, 82 Conn. App. 684, 689, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004); or "require expert medical testimony," so long as "there [is] . . . sufficient direct or circumstantial evidence or a combination of both presented to the jury from which it may find such injury." *State* v. *Rumore*, 28 Conn. App. 402, 414, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). Whether

an injury constitutes a "serious physical injury," for the purpose of § 53a-60 (a) (1), is a fact intensive inquiry and, therefore, is a question for the jury to determine. *State* v. *Ovechka*, 292 Conn. 533, 545–47, 975 A.2d 1 (2009).[6]

"In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 593–94, 72 A.3d 379 (2013).

At trial, the emergency medical services responder, the victim's emergency department treating physician, and the victim all testified as to the injuries sustained by the victim.[7] During the state's direct examination of the victim, the victim testified: "[The defendant] hit me in the jaw and it fractured my jaw. My whole jaw [was] dislocated." The victim further testified: "I stepped back in defense . . . trying to avoid being hit. He swung several times . . . [and] hit me several times. . . . [O]nce in the jaw, once in the rib cage, took a divot out of my wrist. I still have the mark there and *I still have the fractured jaw* . . . ." (Emphasis added.) The following exchange between the state and the victim took place:

"[The Prosecutor]: After he hit you in the jaw . . . [w]as that the point where you fell down?

"[The Witness]: That's when I fell to the ground.

\* \* \*

"[The Prosecutor]: When you fell down on the ground, did you lose consciousness . . . .

"[The Witness]: For a quick second . . . . When I got struck I fell to my knees . . . . I can say that I was . . . dazed, really dazed. . . .

"[The Prosecutor]: So, you weren't fully conscious but you were dazed.

"[The Witness]: I was dizzy . . . ."

On the last day of evidence, during the state's direct examination of Dr. Russo, the following exchange also occurred:

"[The Prosecutor]: [The victim] suffered a head con-

tusion, correct?

"[The Witness]: Correct.

"[The Prosecutor]: Where in the head did he receive a head contusion?

"[The Witness]: The left face.

"[The Prosecutor]: The left face, and based on your training and your experience in your examination of [the victim], what, if anything, is a head contusion indicative of?

"[The Witness]: Blunt force injury to the head."

Russo further testified that, as a result of the blunt force injury, the victim suffered a nondisplaced fracture to the lower jaw and a facial laceration requiring three sutures. Medical records admitted into evidence indicated that the victim was directed to maintain a liquid puree diet after his discharge due to the injury to his lower jaw. See *State* v. *Lewis*, 146 Conn. App. 589, 608–609, 79 A.3d 102 (2013), cert. denied, 311 Conn. 904, 83 A.3d 605 (2014).

As discussed in *Ovechka*, "serious physical injury" may include a range of injuries and is a fact based inquiry for the jury to decide. In reaching its conclusion that "temporary blindness, chemical conjunctivitis and chemical burns suffered by [the victim] constituted sufficient evidence of [s]erious physical injury under § 53a-3 (4)"; (internal quotation marks omitted) *State* v. *Ovechka*, supra, 292 Conn. 547; our Supreme Court considered a number of its prior decisions in which it had upheld jury findings that "serious physical injury" had been inflicted. Compare *State* v. *Barretta*, supra, 82 Conn. App. 690 (upholding judgment of conviction where victim suffered extensive bruises and abrasions), with *State* v. *Sawicki*, 173 Conn. 389, 395, 377 A.2d 1103 (1977) (upholding judgment of conviction where victim suffered significant facial fractures). We believe that these cases are instructive with respect to the present case.

Here, the defendant struck the victim with the head of a golf club at least three times: once in the arm; once in the face, causing the fracture of the lower jaw and thereby affecting his consciousness; and once in the chest, after he had fallen to the ground. These blows caused the victim to suffer contusions, abrasions, and bleeding from his ear. Furthermore, almost two years after the attack, the victim testified that his jaw was still fractured. Although permanency is not a requirement of "serious physical injury," under the present circumstances, the lasting effects of the injuries on the victim are certainly relevant when considering the defendant's claim. Moreover, testimony and medical records admitted into evidence also established that the victim's injuries had a lasting effect on the functioning of his jaw and resulted in a material modification to his diet for

a period after the attack. On the basis of the evidence in the record and the inferences that reasonably could be drawn therefrom, construed in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that victim suffered physical injury that caused "serious impairment of health," such that he suffered "serious physical injury" under §§ 53a-3 (4) and 53a-60 (a) (1). See *State* v. *Lewis*, supra, 146 Conn. App. 609. Accordingly, the defendant's claim must fail.

## II

Next, the defendant claims that he was deprived of his constitutional right to a fair trial because the prosecutor committed certain acts of impropriety during closing argument by arguing facts not in evidence. Specifically, the defendant claims that the prosecutor's argument regarding Russo's testimony, which addressed whether the kind of blunt force trauma experienced by the victim *could* cause a serious brain injury, was improper.[8] We agree with the defendant that the prosecutor's argument with respect to Russo's testimony was improper. We agree with the state, however, that it did not deprive the defendant of his constitutional right to a fair trial.

The following standard of review informs our resolution of the defendant's claim. "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry."[9] (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "[If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 762, 51 A.3d 988 (2012).

Moreover, because the claimed prosecutorial improprieties occurred during closing arguments, we look to the following legal principles. "In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn there-

from." (Internal quotation marks omitted.) *State* v. *Miller*, 128 Conn. App. 528, 535, 16 A.3d 1272, cert. denied, 301 Conn. 924, 22 A.3d 1279 (2011). "Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Maguire*, 310 Conn. 535, 553–54, 78 A.3d 828 (2013). "In fulfilling his duties, a prosecutor must confine the arguments to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Citation omitted.) *State* v. *Copas*, 252 Conn. 318, 349, 746 A.2d 761 (2000).

At trial, during Russo's direct testimony, the state asked whether the type of injury sustained by the victim "*could* . . . lead to a concussion" or "could lead to a brain injury?" (Emphasis added.) Russo answered in the affirmative. Thereafter, defense counsel objected: "[Y]our Honor, this is based on speculation. The question was, *could it*—the previous question was *could it*. . . . [M]edical testimony has to be more certain than that." (Emphasis added.) The court sustained the objection, stating: "The area of examination is appropriate. The form of the question is not." After additional unsuccessful attempts at properly framing the question, the state ceased the line of inquiry.

Despite the foregoing, during the state's closing argument as to count two, the prosecutor argued: "Now, ask yourself, is a golf club a dangerous instrument? . . . [Is it] capable of causing death or serious physical injury? . . . The state submits to you that when you look at all the evidence, the injuries that the defendant caused [the victim] when he struck him with the golf club; [t]he fact that [the victim] had to get stitches to his jaw, and the testimony of Dr. Russo that a force blunt blow to the head like the one that [the victim] received with the golf club *could cause a concussion or brain damage* . . . you could find beyond a reasonable doubt that . . . the defendant used . . . *a dangerous instrument* . . . ."[10] (Emphasis added.)

In response to the prosecutor's argument, defense counsel emphasized in his closing argument that "[t]he evidence that the state referred to is not in this case. The evidence that this injury could have led to a concussion or brain damage, I suggest to you . . . [is] not in this case. I suggest to you that Dr. Russo gave you *no evidence* from which you could find *serious physical injury* in this case."[11] (Emphasis added.)

After the conclusion of closing argument and after the jury had been excused for a short recess, defense counsel raised the following objection with the court: "[T]he state's argument that . . . the jaw fracture could have led to a concussion and then brain damage, [which] was the subject of my objections during the

case . . . I do not believe . . . is evidence in [the record]." The court explained that it would address defense counsel's objection in the following way: "In my instructions, I stress in the first part that the . . . arguments of the attorneys are not evidence. If the evidence is different from what they believe the evidence is, they are to follow their own [recollection]. . . . So, your comments are noted, but you will see that I've addressed that situation." Thereafter, during the jury charge, the court provided a general charge explaining that argument is not evidence.[12]

The state contends that the prosecutor's argument simply urged the jury, on the basis of Russo's testimony, to draw a reasonable inference that a golf club, when swung at a person's head, could be considered a dangerous instrument that could cause serious injury. We find this claim unpersuasive under the present circumstances. It is true that, ordinarily or absent some compelling reason to the contrary, this may be a reasonable inference to draw. It is also true that, "[w]hile the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Maguire*, supra, 310 Conn. 553–54.

Here, the state's argument went beyond merely encouraging the jury to draw an inference—it argued the very evidence that the court had excluded from the record. Although a prosecutor is free to advance conclusions reasonably supported by the evidence, he or she may not use closing argument to argue evidence that has been excluded by the court. See id., 554. Because the court sustained defense counsel's objection to Russo's testimony as to whether the blunt force trauma experienced by the victim *could* lead to a concussion or brain damage, we agree with the defendant that the argument was improper. See *State* v. *Ross*, 151 Conn. App. 687, 698–99, 95 A.3d 1208, cert. denied, 314 Conn. 926, 101 A.3d 271, 272 (2014). We conclude, however, that the improper argument was harmless.

In considering the defendant's claim that the prosecutor's improper argument deprived him of the constitutional right to a fair trial, we begin by noting that, during the court's charge to the jury, the court made the following statement: "[T]he defendant has been charged in an information. The information has been read to you at the beginning of the trial and will be with you during your deliberations. . . . Each count alleges a separate crime. It will be your duty to consider each count separately in deciding the guilt or not guilty of the defendant." The court continued by providing the jury with a description of each charge, as provided in the amended long form information. The court stated in relevant part:

"Count one, assault in the [second] degree . . . [the defendant], with intent to cause serious physical injury to another person, caused such injury to such person, to wit, *fractured the mandible of* [the victim], in violation of § 53a-60 (a) (1) of the Connecticut General Statutes." (Emphasis added.)

We further note that the court, by focusing its instruction as to count one on the specific conduct alleged in the long form information, namely, that the defendant had violated § 53a-60 (a) (1) because he "fractured the mandible of [the victim]," in effect, isolated and, rendered irrelevant, the prosecutor's improper argument.[13] Although an alternative theory of "serious physical injury" relating to the victim's consciousness was advanced by the prosecutor, the subsequent instruction focusing on the charge as presented in the long form information was material with respect to the defendant's claim. As discussed previously in this opinion, our review of the record indicates that there was sufficient evidence presented at trial to support the conclusion that, as a result of the fractured mandible, the victim suffered a "serious physical injury." Here, because the court's instruction re-oriented the jury's focus to the issue of whether the victim's broken jaw constituted a "serious physical injury," and because the prosecutor's reference to the excluded testimony did not relate to whether the victim's broken jaw constituted a "serious physical injury," the state's improper argument was too remote, in the context of the present appeal, to be considered harmful.

Furthermore, the prosecutor's reference to Russo's testimony was an isolated instance that did not conform to a pattern of conduct repeated throughout the trial. Although the court declined to provide the jury with a specific instruction addressing the improper argument, the court did provide a general instruction emphasizing that argument is not evidence and that statements made during closing argument by the attorneys are not to be considered as evidence. Given the underlying facts of this case, the isolated nature of the prosecutor's argument, and the fact that the improper argument was not germane to the issue of whether the victim's broken jaw constituted a "serious physical injury," we conclude that the court's general instruction was sufficiently curative and eliminated any danger that the prosecutor's improper comment might mislead the jury.[14] Accordingly, we conclude that, despite the prosecutor's improper statement during closing argument, the impropriety was not so egregious that it deprived the defendant of his constitutional right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-60 (a) (1) provides that a person is guilty of assault in the second degree when, "[w]ith intent to cause serious physical injury to another person, the actor causes such injury to such person or to a third person . . . ."

Count one of the substitute long form information provides: "[The defendant], with intent to cause serious physical injury to another person, caused such injury to such person (to wit: fractured the mandible of [the victim]) in violation of [§] 53a-60 (a) (1) . . . ."

[2] General Statutes § 53a-60 (a) (2) provides that a person is guilty of assault in the second degree when, "with intent to cause physical injury to another person, the actor causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

Count two of the substitute long form information provides: "[The defendant], with intent to cause physical injury to another person, caused such injury to such person by means of a dangerous instrument (to wit: [the defendant] struck [the victim] with a golf club) in violation of [§] 53a-60 (a) (2) . . . ."

[3] On appeal, the defendant does not challenge his conviction under § 53a-60 (a) (2) or under § 53a-181 (a) (1) or (2).

[4] As to count one, the defendant was sentenced to seven years of incarceration, followed by three years of special parole. As to count two, the defendant was sentenced to seven years of incarceration, followed by three years of special parole, to run concurrent with the sentence imposed on count one.

[5] General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

[6] In *Ovechka*, our Supreme Court considered what constituted a "serious physical injury" and concluded that, in the case before it, "temporary blindness, chemical conjunctivitis and chemical burns suffered by [the victim] constituted sufficient evidence of [s]erious physical injury under § 53a-3 (4) . . . ." (Internal quotation marks omitted.) *State* v. *Ovechka*, supra, 292 Conn. 547. In its discussion of the issue, the court noted that "[despite] the difficulty of drawing a precise line as to where physical injury leaves off and serious physical injury begins . . . we remain mindful that [w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record . . . and that we must construe the evidence in the light most favorable to sustaining the verdict." (Citations omitted; internal quotation marks omitted.) Id., 546–47.

[7] The emergency medical services responder who attended to the victim at the scene of the incident testified that "[the victim] sustained injury to his right forearm and injuries to the left side of his face," and that the victim "had a laceration to his right arm . . . and he had some blood coming from his left ear."

[8] The defendant also claims that the prosecutor was guilty of certain improprieties during her rebuttal argument. Specifically, the defendant claims that the prosecutor argued that the victim had a permanent scar on his arm, as a result of being struck with the golf club, a fact that he claims was not in evidence. The record indicates that the victim testified at trial to the following: "[The defendant] hit me several times. . . . [O]nce in the jaw, once in the rib cage, took a divot out of my wrist. *I still have the mark there* and I still have the fractured jaw . . . ." (Emphasis added.) Given the nature of the foregoing testimony, namely, that the victim had a lasting mark on his arm almost two years after the altercation, we conclude that this statement during rebuttal argument was within the bounds of reasonable conduct. See *State* v. *Miller*, 128 Conn. App. 528, 535, 16 A.3d 1272, cert. denied, 301 Conn. 924, 22 A.3d 1279 (2011).

[9] "The question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . . This assessment is made through application of the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)] . . . . These factors include: the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Daniel W.*, 180 Conn. App. 76, 111–12, 182 A.3d 665, cert. denied, 328 Conn. 929, 182 A.3d 638 (2018).

[10] When addressing the issue of whether the victim suffered a "serious physical injury," as to count one, the prosecutor did not argue the excluded testimony. Rather, the prosecutor made the following statement to the jury:

"Now, what evidence do you have that the defendant caused [the victim] a serious impairment to his health? You have the testimony of Dr. Russo, who testified that [the victim's] jaw was fractured and that it required stitches. You also heard [the victim's] testimony that when he was struck in the face, he was in a lot of pain, and he was dazed, and he almost lost consciousness."

[11] Defense counsel further advanced his theory of the case as to "serious physical injury" by arguing: "Remember what the [emergency medical technician] said . . . . He said these injuries were minor, and Dr. Russo never said anything to contrary. . . . [I]f you've ever had a broken bone, you sort of know what the difference is between a nondisplaced and a displaced fracture."

[12] The court instructed the jury: "In reaching your verdict, you should consider all the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. These include (1) the arguments and statements by the lawyers. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence."

[13] See footnote 1 of this opinion.

[14] We further note that, instead of objecting at the time the argument was made, defense counsel delayed his objection and waited until his closing argument to address the impropriety, and did so in such a way that was tactically beneficial to the defendant. Said differently, by reframing the prosecutor's statement so that it cast doubt on count one, rather than on count two—the context in which the statement originally was made—defense counsel was able to use the prosecutor's remark to bolster the defendant's claim that there was insufficient evidence of "serious physical injury."

———————————————————