******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* BAKARI STEPHERSON
### (AC 47603)

Cradle, C. J., and Westbrook and Bishop, Js.

*Syllabus*

Pursuant to statute (§ 53a-3 (4)), serious physical injury is defined as "physical injury . . . which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

Convicted of assault in the second degree and other crimes as a result of an altercation at a gas station, the defendant appealed. He claimed that the evidence was insufficient to sustain his conviction of assault in the second degree because the evidence introduced by the state at trial was insufficient to establish that the victim, M, had sustained a serious physical injury, as defined in § 53a-3 (4), when he was struck in the leg by the open passenger door of the defendant's vehicle as the defendant drove away from the scene. *Held*:

The jury lacked sufficient evidence to reasonably conclude that M sustained a serious physical injury on the basis of his having sustained a serious physical disfigurement to his leg, as neither M nor a medical professional testified at trial, the state did not submit evidence of a scar or other marking that existed following the injury, and, as the only evidence before the jury was M's medical records and photographs of his leg that were taken at the time of the injury, any conclusion by the jury regarding whether M's injury resulted in a serious disfigurement would have required speculation or conjecture.

The evidence was insufficient to reasonably establish that the injury to M's leg resulted in a serious impairment of his health, as the jury was left to make that determination without seeing or hearing about the outcome of the injury over time or hearing from M or a medical professional about how the injury impacted M's health or standard of living.

The state did not present sufficient evidence for the jury reasonably to conclude that M suffered a serious impairment of a bodily organ, namely, his skin, as the jury, in the absence of testimony from M or a medical professional, lacked an evidentiary basis from which it could conclude that the laceration to M's leg seriously impacted the functioning of his skin.

Argued September 2, 2025—officially released January 6, 2026

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of assault in the second

degree and reckless endangerment in the first degree, and with one count each of the crimes of larceny in the sixth degree, robbery in the first degree and robbery in the third degree, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Kwak, J.*; verdict and judgment of guilty of two counts of reckless endangerment in the first degree and one count each of larceny in the sixth degree and assault in the second degree, from which the defendant appealed to this court. *Reversed in part*; *judgment directed*.

*Gary A. Mastronardi*, assigned counsel, for the appellant (defendant).

*Rebecca Z. Oestreicher*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Thai Chhay*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Bakari Stepherson, appeals from the judgment of conviction, rendered following a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (3).[1] The defendant claims that the evidence, even when construed in the light most favorable to sustaining the verdict, was insufficient for the jury reasonably to find that the victim, Issam Madineh, had suffered a serious physical injury. We agree with the defendant and, accordingly, reverse in part the judgment of conviction.[2]

The following facts, which the jury reasonably could have found, and procedural history are relevant to the

---

[1] The defendant also was convicted of larceny in the sixth degree and two counts of reckless endangerment in the first degree. The defendant is not challenging his conviction of these offenses in the present appeal.

[2] The defendant also claims on appeal that his assault conviction should be overturned because his actions were not the proximate cause of Madineh's injuries. We do not reach the merits of this claim because our resolution of whether the victim suffered a serious physical injury is dispositive.

resolution of this appeal. On July 17, 2020, the defendant drove to a gas station in Waterbury owned by Abid Chouiki. He drove his vehicle, a silver PT Cruiser, to gas pump number six and exited the vehicle. He removed a panel from the side of the pump. Chouiki, who was watching on a surveillance camera in his office inside the gas station, believed the defendant was tampering with the pump because it was not necessary to remove any panel in order to pay for gasoline.

Chouiki and his manager, Madineh, approached the defendant and confronted him about his attempt to tamper with the gas pump. The defendant denied their allegations and attempted to get into his vehicle and leave the gas station. Chouiki, who already had called the police, and Madineh attempted to detain the defendant until the police arrived. The defendant resisted their efforts, and Chouiki, Madineh and the defendant became involved in a physical altercation. Chouiki and Madineh unsuccessfully attempted to take the defendant's keys from him. At some point, Chouiki opened the front passenger side door of the defendant's PT Cruiser to prevent the defendant from leaving the scene. The passenger door remained open as the defendant got into the vehicle, placed it in reverse, and began backing away from the pump. Both Madineh and Chouiki were standing on the passenger side of the vehicle, and the open passenger door knocked them aside, hitting Madineh's right leg. The defendant drove out of the parking lot. Officers from the Waterbury Police Department responded to the scene shortly thereafter. Another patrol officer located the defendant and detained him. Chouiki was taken to identify the defendant, who was then arrested.

Madineh complained of right leg pain, and one of the responding police officers observed a laceration on his

right calf. Another officer took a photograph of Madineh's calf. Madineh was transported to Waterbury Hospital where he received treatment for a six centimeter laceration to his right lower leg and was released.

The defendant was charged in an amended substitute information with one count of larceny in the sixth degree in violation of General Statutes § 53a-125b, one count of robbery in the third degree in violation of General Statutes § 53a-136, one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), one count of assault in the second degree in violation of § 53a-60 (a) (3), one count of assault in the second degree in violation of § 53a-60 (a) (2), and two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63. He pleaded not guilty to all charges and elected to have a jury trial. He was represented at trial by Attorney Robert A. Serafinowicz.

The court, *Kwak, J.*, conducted a trial over three days. Chouiki was the only witness called by the state who testified regarding the nature and extent of Madineh's injury.[3] In response to a question about whether he had suffered any kind of pain or discomfort from being hit by the passenger door, Chouiki testified that his left side was "sore a little" but explained that "the worse damage was my manager more than me because he was bleeding and he ended up going to the hospital. He—I think he lost a few days worth of work." He described Madineh's injury as a "good sized cut on the

---

[3] The state also called to testify Haley Padro and Michael Varone, two of the Waterbury police officers who responded to the incident. Padro testified that Madineh had injured his leg and was taken to the hospital. She was not asked to describe the injury but identified the photograph of the injury that an officer had taken at the scene, which was admitted into evidence as a full exhibit. Varone testified that, when he first arrived on the scene, an ambulance was present and a victim was being treated, but he was not asked to identify the victim and gave no description of the injury being treated.

calf" and testified that Madineh was in the hospital for a couple of hours before he returned home. Additionally, Chouiki testified that Madineh's injury was sore for "some time." He further testified that Madineh stayed home for three days before he returned to work "four or five" days later. He also testified that Madineh could not walk straight "for some time" and that Madineh had to "follow up with . . . [a] specialty doctor . . . ." At the end of Chouiki's cross-examination, defense counsel asked: "And again, it's your testimony here today you didn't suffer serious physical injury, but you believe your employee or former employee might have." Chouiki responded: "Not I believe. I know he did."

Madineh was not called to testify, but the medical records of his treatment at the hospital were admitted into evidence by consent of the parties as a joint exhibit. The medical records provided, in relevant part, that Madineh had sustained a "[six centimeter] laceration to [right] lower leg, subcutaneous tissue protruding out, small amount of bleeding. . . . The skin was prepped and draped in a sterile fashion. Lidocaine 2 [percent] with epinephrine was administered to wound site for local anesthesia. Open wound was closed with #8 3-0 Ethilon sutures. Excised subcutaneous fat. There was minimal bleeding, which was controlled. CSM intact, and dressing applied. Patient tolerated the procedure well and there were no complications. Discussed standard post-procedure care, return precautions and indications, and all questions were addressed." No emergency department staff or medical expert was called to testify regarding the nature of Madineh's injury, his treatment, or to explain the terminology used in the medical records.

The defendant was the only witness called by the defense to testify. He testified that he was not stealing gas and did not want to remain on the scene to interact

with the police, which is why the altercation with Chouiki and Madineh had occurred.

The prosecutor addressed Madineh's injury during closing argument to the jury. The prosecutor argued that "[h]is leg's not broken in half, he's not dead. Whatever the case is. But it's a serious injury. . . . You saw what the injury looked like. It's approximately a three inch open laceration. . . . You're going to have medical documentation regarding it." The prosecutor argued that the "skin is the largest bodily organ you have . . . ." The prosecutor further argued that the skin keeps you dry and "keeps things from going into your system and really—having it is a very important piece. That—his skin, his organ, was severely compromised by the injury. You can see . . . the fatty tissue. The ugly fatty tissue in the skin, okay, when you look at the picture. . . . That's not a normal injury." The prosecutor further argued that the laceration "seriously impairs the bodily function of that particular organ. . . . That's a serious injury."[4]

During his closing argument, defense counsel argued that "[t]he state wants you to convict my client and say he inflicted serious physical injury upon an individual that could not even be bothered to come and sit before you and tell his story. Does that sound right to you? Does that sound like beyond a reasonable doubt where you have an allegation, but then the person who's subject of the allegation is not even there to testify? It's absolutely ridiculous." Defense counsel further argued that "[Madineh], upon admission [to the emergency department] . . . said his pain level was 2. On page 9 of the medical records, he says his primary pain was

---

[4] At trial, the prosecutor primarily argued that the victim's injury was a serious physical injury because it caused a serious impairment to a bodily organ—the skin. In its brief to this court, however, the state focuses its argument on serious physical disfigurement and serious impairment of health as the bases supporting a finding of a serious physical injury.

0. The severe distress designation was labeled a no. Then on page 11, they refer to [Madineh] as having a six centimeter cut. Now does a six centimeter cut, pursuant to the medical records, sound like [a] serious physical injury to you?"

The prosecutor, in his rebuttal, argued: "You also heard . . . argument about serious physical injury. And injury, like I said, it's not the worst injury. It could have been much worse. Six centimeters, it's actually closer to three inches if you do that math; 2.2 centimeters is an inch.[5] That's an open wound. You can see the bubbly, sort of fatty tissue. It looked like little white bubbles. That's a serious impairment to the skin, which is a very important body organ . . . . Legally, that's a serious physical injury." (Footnote added.)

At the conclusion of closing arguments, the trial court gave the following instruction to the jury regarding serious physical injury: "Serious physical injury is something more serious than mere physical injury, which is defined as impairment of physical condition or pain. It is more than a minor or superficial injury. It is defined by statute as physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."[6]

---

[5] We note that an inch is 2.54 centimeters, and, therefore, a six centimeter laceration is approximately 2.36 inches in length.

[6] Although the prosecutor, in his closing argument, contended that the victim had suffered a serious physical injury on the basis of a serious impairment of a bodily organ, the trial court's instruction to the jury defined serious physical injury as a physical injury that involves a substantial risk of death, serious physical disfigurement, serious impairment of health or serious impairment of a bodily organ. Because no evidence was presented that would have supported a finding that Madineh's injury created a substantial risk of death; see footnote 7 of this opinion; the jury properly could have found that the victim had suffered a serious physical injury only under any of the last three prongs of that definition, which, in considering the sufficiency of the evidence, necessitates our independent consideration of each of those three prongs.

The jury found the defendant guilty of larceny in the sixth degree, one count of assault in the second degree as to Madineh and two counts of reckless endangerment in the first degree. The jury found the defendant not guilty with respect to the two robbery counts and the count of assault in the second degree pertaining to Chouiki. The trial court accepted the verdict and later sentenced the defendant to a total effective term of ten years and 364 days of incarceration, execution suspended after five years and 364 days, followed by five years of probation. This appeal followed.

The defendant argues that the evidence was insufficient to prove his guilt of assault in the second degree under § 53a-60 (a) (3). Specifically, he claims that the evidence introduced by the state at trial was insufficient to establish that Madineh had suffered a *serious* physical injury as required under the statute. The state claims, in response, that the jury reasonably could have found that a serious physical injury had occurred on the basis of either a serious impairment of a bodily organ, a serious disfigurement, or a serious impairment of health. We agree with the defendant and, therefore, reverse the judgment of conviction with respect to the charge of assault in the second degree pertaining to Madineh.

We begin by setting forth applicable principles of law and our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Luciano*, 204 Conn. App. 388, 396, 253 A.3d 1005, cert. denied, 337 Conn. 903, 252 A.3d 362 (2021). "As we previously have explained, proof beyond a reasonable doubt does

not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Fisher*, 342 Conn. 239, 249, 269 A.3d 104 (2022).

To obtain a conviction of assault in the second degree under § 53a-60 (a) (3), the state must prove beyond a reasonable doubt that "the actor recklessly cause[d] serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-60 (a) (3). Our statutes define serious physical injury as "physical injury which creates a substantial risk of death,[7] or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." (Footnote added.) General Statutes § 53a-3 (4). As our Supreme Court has noted, the legislature clearly intended for there to be a material difference between a physical injury and a *serious* physical injury due to the difference in the severity of punishment imposed for each. See *State* v. *Petion*, 332 Conn. 472, 481, 211 A.3d 991 (2019). "Assault resulting in physical injury, unless inflicted by discharge of a firearm, carries a maximum term of imprisonment of five years, whereas assault resulting in serious physical injury carries a

---

[7] Whether Madineh suffered a physical injury that created a substantial risk of death was not raised or presented by the state as a basis for the charge of assault in the second degree, nor was any evidence presented to the jury that would have supported a finding that Madineh's injury created a substantial risk of death. Accordingly, we need not discuss this as a possible basis for the jury's verdict.

maximum term of imprisonment of twenty years. . . . Thus, [a]lthough it may often be difficult to distinguish between the two, such a distinction *must* be drawn . . . .'' (Citations omitted; emphasis in original; internal quotation marks omitted.) Id. With these principles in mind, we now address whether the evidence was sufficient to establish, beyond a reasonable doubt, that Madineh suffered a *serious* physical injury.

I

First, the defendant argues that the evidence, construed in the light most favorable to sustaining the verdict, was insufficient to establish that Madineh had suffered a serious physical injury on the basis of a serious disfigurement. We agree.

In *State* v. *Petion*, supra, 332 Conn. 472, our Supreme Court discussed the line between physical injury and *serious* physical injury as those terms relate to disfigurement. The court concluded its analysis on serious physical disfigurement by presenting a multifactor test to consider in determining whether a jury reasonably could decide that a victim has suffered a serious physical disfigurement. The court stated: " 'Disfigurement' means impairment of or injury to the beauty, symmetry or appearance of a person that renders the person unsightly, misshapen or imperfect, or deforms the person in some manner, or otherwise causes a detrimental change in the external form of the person. 'Serious disfigurement' is an impairment of or injury to the beauty, symmetry or appearance of a person of a magnitude that substantially detracts from the person's appearance from the perspective of an objective observer. In assessing whether an impairment or injury constitutes serious disfigurement, factors that may be considered include the duration of the disfigurement, as well as its location, size, and overall appearance. Serious disfigurement does not necessarily have to be permanent or

in a location that is readily visible to others. The jury is not bound by any strict formula in weighing these factors, as a highly prominent scar in a less visible location may constitute serious disfigurement, just as a less prominent scar in a more visible location, especially one's face, may constitute serious disfigurement." (Footnote omitted.) Id., 491–92.

Relying on this test, the court in *Petion* determined that a jury could not reasonably conclude that the injuries sustained by one of the victims in that case constituted a serious physical disfigurement. See id., 495. The victim had two lacerations on her forearm, one measuring 0.30 inches and the other 1.57 inches. Id., 493. The smaller laceration was closed with a single suture, but the larger wound was closed with ten sutures and left a scar after healing. Id., 493–94. Although the state did not have the victim display her scar to the jury, the victim testified about her injury, as did her treating physician. Id., 493. Moreover, photographs of the scar revealed that, by the time of trial, the lacerations had left scars that were roughly the same length, and the scar tissue was slightly lighter in tone than the surrounding skin.[8] Id., 494. On the basis of this information, the jury found that the victim had sustained a disfigurement due to the permanence of the scar. *State* v. *Petion*, 172 Conn. App. 668, 677–78, 161 A.3d 618 (2017). Additionally, the location of the scar made it probable that it would be seen if the victim wore anything shorter than a three-quarter sleeve top. *State* v. *Petion*, supra, 332 Conn. 494. Our Supreme Court, however, reversed this court's judgment in part; id., 507; and determined that, although the scar constituted a disfigurement, it did not rise to the level of a *serious* physical disfigurement. See id., 495. The court stated that "[t]he scar is

[8] At trial, two sets of photographs were admitted into evidence. One set was taken shortly after medical treatment was rendered, and the other set was taken at the time of trial. *State* v. *Petion*, supra, 332 Conn. 493.

not . . . in a prominent location such as her face or neck. It is relatively small in size, uniform in shape (a straight line), and otherwise unremarkable in its general appearance. Although the scar is visible if one looks for it, in the photograph that appears to have been taken from a distance of normal social interaction, its appearance is not such that one's eye naturally would be drawn to it." (Footnote omitted.) Id., 494. The court further stated that "[s]erious disfigurement requires something more than visibility, as it must be visible to mar one's appearance and, hence, meet the threshold for disfigurement." Id. The Supreme Court in *Petion* placed an emphasis on the visibility of the victim's scar, stating that it was "not such that one's eye naturally would be drawn to it." Id. The parallels and distinctions between *Petion* and the case at hand are illuminating.

In the present case, the state did not call Madineh to testify; nor did it submit evidence of the existence of a scar or other marking that existed following the injury. Other than Chouiki's testimony, the only evidence submitted to the jury regarding Madineh's injuries was the medical records from Madineh's time in the hospital's emergency department and the photographs that were taken of his leg at the time of the incident. This evidence reveals that, although the injury to Madineh was slightly larger than those at issue in *Petion*, Madineh's injury was not located in any more of a prominent position than the victim's injury in *Petion*. In the absence of some evidence of the nature of Madineh's injury after the date that it occurred, any conclusion reached by the jury regarding whether the injury resulted in a disfigurement to which "one's eye naturally would be drawn," so as to distinguish this case from *Petion*, would require engaging in impermissible speculation. See, e.g., *State* v. *Little*, 194 Conn. 665, 673, 485 A.2d 913 (1984) (although it is within province of jury to draw reasonable and logical inferences, such inferences

must be founded on evidence, and jury may not resort to speculation and conjecture).

The application of the factors discussed in *Petion* require consideration of not only the nature of the injury at the time of the event, but also how it appeared following the injury. See *State* v. *Petion*, supra, 332 Conn. 493, 497. To make a reasonable finding regarding disfigurement, the jury in the present case required some evidence, be it a photograph, testimony by the victim or a medical expert regarding whether the injury had caused a detrimental change to the appearance of Madineh's leg. The jury had none of that. Even when the evidence is construed in the light most favorable to sustaining the verdict, the jury did not have sufficient evidence to reasonably conclude that Madineh had suffered a serious physical injury on the basis of a serious physical disfigurement.

## II

Next, the defendant argues that there was insufficient evidence to establish that Madineh had suffered a serious physical injury on the basis of a serious impairment of his health. After construing the evidence in the light most favorable to sustaining the verdict, we conclude that the state failed to present sufficient evidence for a jury to reasonably conclude that the victim had suffered a serious impairment of health.

This court previously has addressed what constitutes a "serious impairment of health." See *State* v. *Irizarry*, 190 Conn. App. 40, 44–49, 209 A.3d 679, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019); *State* v. *Dickson*, 10 Conn. App. 462, 465, 523 A.2d 935 (1987). This court concluded in *Irizarry* that a victim, whose injuries had not fully healed by the time of trial, had suffered a serious impairment of health. See *State* v. *Irizarry*, supra, 44, 49. The victim's treating physician testified that "the victim sustained injuries to his left cheek, left

jaw, right forearm and chest wall. . . . [W]hen the victim presented at the hospital emergency department, his arm was tender and swollen, with a visible contusion and skin avulsion, in addition to a contusion on the left side of the face. A computerized axial tomography scan revealed a nondisplaced fracture of the victim's lower jaw. Three sutures were necessary to close the wound on the victim's face." Id., 43. Furthermore, the victim was restricted to a liquid puree diet and instructed to follow up at a maxillofacial clinic regarding his jaw injury, which had not fully healed by the time of the trial. Id., 44. Given this evidence, we explained that, "[a]lthough permanency is not a requirement of 'serious physical injury,' under the present circumstances, the lasting effects of the injuries on the victim are certainly relevant when considering the defendant's claim. . . . [T]he victim's injuries had a lasting effect on the functioning of his jaw and resulted in a material modification to his diet for a period after the attack." Id., 48. As such, we concluded that the jury could have reasonably concluded in *Irizarry* that the "victim suffered physical injury that caused serious impairment of health, such that he suffered serious physical injury . . . ." (Internal quotation marks omitted.) Id., 49.

In *Dickson*, we held that a jury reasonably could have found that a shooting victim had suffered a serious impairment of health on the basis of evidence that the victim fell unconscious, was unable to walk, required hospitalization and surgery to remove a shell fragment from the base of her breastbone, which was an inch to two inches away from her heart and liver, and walked with a limp for about six weeks. See *State* v. *Dickson*, supra, 10 Conn. App. 465. Our conclusion that the evidence was sufficient to establish that the victim had suffered a serious impairment of health was supported by the victim's testimony and the testimony of medical experts who provided an analysis of what constitutes

an impairment of health. See id., 466. This court acknowledged that " '[i]mpair' is defined as 'to make worse; diminish in quantity, value, excellence or strength . . . damage, lessen . . . .' " Id., 465–66, quoting Webster's Third New International Dictionary. The court additionally stated that the victim's full rehabilitation did not "preclude a jury's finding that the victim's health was seriously impaired." Id., 466. We held that "the testimony of the victim and the expert medical testimony were sufficient to support a finding that the injuries constituted a 'serious impairment of health.' " Id., 465.

In the present case, the state directs our attention to a physician's recommendation in Madineh's medical records that Madineh have "[m]obility support items readily available" while he recovers and, relying on *Dickson*, argues that this is sufficient evidence of a serious impairment of health. We disagree. The victim in *Dickson* suffered far more substantial injuries to establish a serious impairment of health. *State* v. *Dickson*, supra, 10 Conn. App. 465. Additionally, testimony from both the victim and medical experts was presented in *Dickson* to establish the seriousness of the impairments to the victim's health. Id., 466. In the present case, the state did not call Madineh to testify about the extent of his injuries or their long-term and short-term effects on his health. Although Chouiki testified that Madineh was unable to work for a period of "four or five" days, this short absence from work is antithetical to the six weeks of walking with a limp that the victim experienced in *Dickson* as well as the victim's protracted pain from her wounds. See *State* v. *Dickson*, supra, 465.

As stated previously, the state offered no testimony from a medical professional regarding Madineh's injury. Although Connecticut does not require expert medical testimony in every case to prove serious physical injury,

in many cases in which courts have concluded that a jury had reasonably found that an injury caused a serious impairment to the victim's health, both expert medical testimony and victim testimony was presented. See, e.g., *State* v. *Ovechka*, 292 Conn. 533, 542, 975 A.2d 1 (2009) (testimony by victim and physician helped establish that chemical burns to victim's face, neck and chest, temporary blindness and eye irritation constituted serious impairment of health); *State* v. *Almeda*, 211 Conn. 441, 450, 560 A.2d 389 (1989) (serious impairment of health was established by testimony from victim and medical expert that victim was " 'laid up' " for roughly one year and still felt " 'lousy' " eight years after shooting that left shattered bullet lodged in victim's neck); *State* v. *Leveille*, 232 Conn. App. 687, 695–99, 337 A.3d 797 (2025) (testimony by victim and physician that victim suffered lacerations to chin, forehead, cheeks, and major damage to ear helped establish serious impairment of health); *State* v. *Kenneth B.*, 223 Conn. App. 270, 273, 275–76, 308 A.3d 82 (medical testimony established that victim suffered lacerations to forehead and lips, was in severe pain, missing tooth, and lost consciousness resulting in serious impairment of health), cert. denied, 348 Conn. 952, 308 A.3d 1038 (2024); *State* v. *Irizarry*, supra, 190 Conn. App. 43–44 (victim and treating physician testified that victim lost consciousness, sustained injuries to left cheek and jaw, right forearm and chest wall, and was required to restrict diet to liquid puree, which constituted serious impairment of health).

Because neither Madineh nor a medical expert testified at trial in the present case, the jury was left to determine whether Madineh's injury caused a serious impairment to his health without seeing or hearing about the outcome of the injury over time or hearing from Madineh or a medical expert about how the injury had impacted his health or standard of living. On the

basis of our review of the evidence admitted in the present case, we conclude that the evidence was insufficient to reasonably establish for the jury that the victim had suffered a serious impairment of health.

### III

Finally, the defendant argues that there was insufficient evidence from which the jury reasonably could have found that Madineh had suffered a serious impairment of his skin, a bodily organ. Even if we assume, without deciding, that it is within the general knowledge of the ordinary juror that the skin is a bodily organ,[9] we agree that, when the evidence is construed in the light most favorable to sustaining the verdict, the state failed to present sufficient evidence to establish that the laceration that Madineh suffered constituted a *serious* impairment to the function of the skin.

As previously stated, our Supreme Court in *Petion* highlighted that the legislature chose to make a clear delineation between a physical injury and a *serious* physical injury, significantly increasing the punishment for an assault that resulted in the latter. The term "serious impairment of a bodily organ" is not defined by statute. Merriam-Webster's Collegiate Dictionary defines "organ" as "bodily parts performing a function or cooperating in an activity." Merriam-Webster's Collegiate Dictionary (12th Ed. 2026) p. 1120. The court in *Ovechka* determined that a victim who, as a result of being sprayed with pepper spray, had burns on his face, neck and chest, and suffered from temporary blindness and eye irritation, had suffered a serious impairment of a bodily organ. See *State* v. *Ovechka*, supra, 292 Conn.

---

[9] During his summation, the prosecutor argued to the jury that the laceration to Madineh's right calf was a serious impairment of his skin, an important bodily organ. It goes without saying, however, that counsel's representations and arguments are not evidence on which a jury may rely. See, e.g., *Baker* v. *Baker*, 95 Conn. App. 826, 832, 898 A.2d 253 (2006) (" 'representations of counsel are not evidence' ").

542. Specifically, the court concluded that "temporary blindness, chemical conjunctivitis and chemical burns suffered by [the victim] constituted sufficient evidence of [s]erious physical injury under § 53a-3 (4); (internal quotation marks omitted) id., 547; and that "[t]he jury reasonably could have found that a loss of vision in both his eyes . . . constituted a loss or serious impairment of the function of any bodily organ." (Internal quotation marks omitted.) Id., 542.

Recently, a victim who received a laceration through nearly the entire structure of his ear was found to have suffered a serious impairment of a bodily organ. See *State* v. *Leveille*, supra, 232 Conn. App. 696–97. This court in *Leveille* concluded that the evidence was sufficient to support a jury's conclusion that the victim had suffered a serious impairment of a bodily organ, stating: "On the basis of the foregoing testimony, we conclude that there was sufficient evidence from which the jury reasonably could have found that the defendant caused the victim physical injuries that caused the serious loss or impairment of the function of a bodily organ, specifically, his skin and ear." Id.

Although, as illustrated in our case law, it is possible for a jury to find a serious impairment of a bodily organ without the benefit of expert testimony, the majority of such cases involved a victim that had lost consciousness. See, e.g., *State* v. *Kenneth B.*, supra, 223 Conn. App. 277 (evidence of victim's *loss of consciousness* supported finding of serious impairment of bodily organ); *State* v. *Morlo M.*, 206 Conn. App. 660, 673–74, 261 A.3d 68 (in addition to severe bruising on scalp, face, chest, back, legs, arms, and left side, victim's *loss of consciousness* supported finding of serious impairment of bodily organ), cert. denied, 339 Conn. 910, 261 A.3d 745 (2021). We do not doubt that it is within the knowledge of the ordinary juror that the loss of consciousness reflects a serious impairment of the function

of a person's brain. We are not convinced, however, that, without more evidence than what was offered in the present case, a jury reasonably could find that the type of laceration to the skin suffered by Madineh was so significant an injury as to qualify as a *serious* impairment of a bodily organ.

The defendant, relying on precedent from Massachusetts,[10] argues that the state failed to present sufficient evidence that the function of Madineh's skin had been seriously impaired. The defendant argues that whether an organ was seriously impaired should depend on whether "damage to the structure of the organ is significant enough to compromise its ability to perform its function . . . ." *Commonwealth* v. *Scott*, 464 Mass. 355, 359, 982 N.E.2d 1166 (2013). The state attempts to distinguish *Scott* by arguing that, unlike the evidence in *Scott*, "the evidence presented at trial . . . did not require the jury to engage in speculation." We disagree with the state.

As we previously discussed, although expert medical testimony is not required in every case involving a serious physical injury, it generally will be needed whenever jurors are required to find facts normally outside

---

[10] Massachusetts' assault statute similarly defines a "serious bodily injury" as including an injury that results in "loss or impairment of a bodily function, limb or organ . . . ." (Internal quotation marks omitted.) *Commonwealth* v. *Scott*, 464 Mass. 355, 356 and n.1, 982 N.E.2d 1166 (2013), quoting Mass. Ann. Laws c. 265, § 13A (c). In *Scott*, the Supreme Judicial Court of Massachusetts determined that a jury could not conclude, in the absence of expert medical testimony, whether a laceration of the victim's liver was a serious bodily injury without resorting to speculation. See id., 360–61. Significantly, the court stated: "The jury [is] permitted to draw reasonable inferences from the evidence; [it is] not permitted to engage in speculation or conjecture as to the meaning of unexplained technical phrases and notations" in medical records. Id., 362. Although medical records were admitted into evidence in *Scott*, the lack of expert testimony to explain the content of those records necessarily required the jury to rely on conjecture and speculation to decipher the meaning of the records. Id., 360.

of their common knowledge. Here, neither expert testimony nor victim testimony was presented to provide the jury with an evidentiary basis from which it could conclude that the laceration to Madineh's calf, although undoubtedly injuring the skin, also *seriously* impacted the function of the skin as an organ of the body. For many of the same reasons previously stated with respect to whether Madineh's injury involved a serious impairment of health, we conclude that, when the evidence is construed in the light most favorable to sustaining the verdict, the state did not present sufficient evidence for a jury reasonably to conclude, beyond a reasonable doubt, that Madineh had suffered a serious impairment of a bodily organ.

The judgment is reversed only as to the defendant's conviction of assault in the second degree in violation of General Statutes § 53a-60 (a) (3), the defendant's sentence is vacated and the case is remanded with direction to render judgment of acquittal as to the charge of assault in the second degree in violation of General Statutes § 53a-60 (a) (3) and to resentence the defendant on the remaining charges of which he was convicted.

In this opinion the other judges concurred.